LIBBY LUMBER CO., RESPONDENT, *v.* PACIFIC STATES
FIRE INSURANCE CO., APPELLANT.

(No. 6,083.)

(Submitted March 25, 1927.   Decided April 19, 1927.)

[255 Pac. 340.].

*Fire Insurance—Ownership of Property at Time of Issuance
of Policy—Breach of Warranty—Policy Void—Executions.*

Fire Insurance—Contract Void if Insured Without Insurable Interest
in Property.
  1.   Under section 8075, Revised Codes, 1921, if one insuring prop-
erty against fire has no insurable interest therein the contract
is void, and under section 8076 an interest insured must exist when
the insurance takes effect and when the loss occurs.

Same—Contract Liberally Construed in Favor of Insured.
  2.   Contracts of fire insurance must be liberally construed in favor
of the insured.

Same—Title to Insured Property—Provision in Policy Refers to Date
When Policy Written.
  3.   The provision of a fire insurance policy to the effect that the
policy shall be void if the interest of the insured in the premises
be other than one of unconditional and sole ownership has refer-
ence to the state of the title when the policy was written or when
a rider was attached to it showing transfer of title to the then
owner and change of policy to him.

Execution—Purchaser of Real Property at Execution Sale Acquires All
Interest of Debtor, Subject to Right of Redemption.
  4.   The purchaser of real property at execution sale, on issuance
of sheriff's deed to him, acquires all the right, title and interest
of the judgment debtor to the property, subject to the right of
redemption.

Fire Insurance—When Ownership of Property by Insured is Sole and
Unconditional.
  5.   The ownership contemplated by the provision of a fire insur-
ance policy in requiring that the interest of the insured in the
premises must be one of sole and unconditional ownership is sole
when no one other than the insured has any interest in the prop-
erty as owner, and unconditional when the quality of the estate
is not limited or affected by any condition, the provision referring
to some change of interest the result of which is to make the loss
in case of fire fall upon someone other than the insured.

Same—Breach of Warranty as to Ownership of Property Voids Policy.
  6.   Under the rule that a vendee in possession of realty under an
executory contract of purchase is considered the absolute owner or
owner in fee, *held*, that where the owner of a grain elevator ac-

2.   See 14 R. C. L. 926.
4.   See 10 R. C. L. 1324.
5.   See 14 R. C. L. 1058, 1114; 27 R. C. L. 334.

quired under a sheriff's deed had the property insured after execution of a contract of sale which was enforceable by either party, the deed being placed in escrow and the purchaser being given possession, the purchaser was its owner thenceforth; that the insured at the time of the execution of the policy had no insurable interest in the property; and that therefore there was a breach of warranty as to ownership, resulting in avoidance of liability to the insured for the loss sustained.

---

[1, 2]   Fire Insurance, 26 **C. J.**, sec. 1, p. 17, n. 4; sec. 2, p. 18, n. 11; p. 20, n. 16; sec. 70, p. 72, n. 19, p. 74, n. 23, 25, p. 75, n. 28; sec. 208, p. 170, n. 60, 61, 62, 63, p. 171, n. 64, 65, 66, 67.   Insurance, 32 **C. J.**, sec. 265, p. 1152, n. 94.

[3]   Fire Insurance, 26 **C. J.**, sec. 208, p. 171, n. 76.

[4]   Executions, 23 **C. J.**, sec. 789, p. 746, n. 15.

[5]   Fire Insurance, 26 **C. J.**, sec. 70, p. 74, n. 26; sec. 209, p. 172, n. 84, p. 173, n. 85, 96; sec. 212, p. 174, n. 12; sec. 213, p. 176, n. 34; sec. 215, p. 178, n. 86 New; sec. 279, p. 228, n. 3, p. 229, n. 10, 13, 14; sec. 285, p. 233, n. 86, 92.   Interest, 33 **C. J.**, p. 262, n. 42, 43.   Vendor and Purchaser, 39 **Cyc.**, p. 1232, n. 99.

[6]   Fire Insurance, 26 **C. J.**, sec. 285, p. 233, n. 89, p. 234, n. 99. Vendor and Purchaser, 39 **Cyc.**, p. 1179, n. 13.

*Appeal from District Court, Cascade County; Stephen J. Cowley, Judge.*

ACTION by the Libby Lumber Company against the Pacific States Fire Insurance Company.   Judgment for plaintiff and defendant appeals.   Reversed and remanded, with directions to enter judgment for defendant for its costs.

*Mr. R. M. Armour, Mr. Charles Davidson* and *Mr. Gus C. Moser,* of the Bar of Portland, Oregon, for Appellant, submitted a brief; *Mr. Armour* argued the cause orally.

*Messrs. Hartman & Ford* and *Mr. R. J. Powell,* of the Bar of Minneapolis, Minnesota, for Respondent, submitted a brief; *Mr. Powell* argued the cause orally.

The crucial question in this case is whether the agreement between the Libby Lumber Company and the Montana State Bank of Geraldine was an option or a sale; an escrow upon terms which, according to its effect and the real intent of the parties, merely extended the time to redeem from December 21, 1921, to October 31, 1922, or a contract of sale which vested a present equitable interest in the Montana

State Bank and made it the party most vitally interested in the insurance in case of loss. The provision in the policy relating to "sole and unconditional ownership" relates to the existing condition or state of the insured's title at the time he is insured; while the provision relating to change in "title, interest or possession" is a promissory warranty—relating to the future. (*Rosenstock* v. *Mississippi Home Ins. Co.*, 82 Miss. 674, 35 South. 309; *Collins* v. *London Assur. Co.*, 165 Pa. 298, 30 Atl. 924; *Downs* v. *German Alliance Ins. Co.*, 6 Penne. (Del.) 166, 67 Atl. 146; *Fidelity Phenix Fire Ins. Co.* v. *O'Bannon* (Tex.), 178 S. W. 731; 2 Cooley's Briefs on Insurance, p. 1459 et seq.; 6 Id., p. 499 et seq.; *Parsons, Rich & Co.* v. *Lane*, 97 Minn. 98, 7 Ann. Cas. 1144, 4 L. R. A. (n. s.) 231, 106 N. W. 485; *Southern Cotton Oil Co.* v. *Prudential Fire Ins. Co.*, 78 Hun (N. Y.), 373, 29 N. Y. Supp. 128.)

Conceding, for the purpose of the argument, that the provision making the policy void "if the interest of the insured be other than unconditional and sole ownership" should be deemed an affirmative warranty, such provision has reference to the condition of the title or interest when the policy was issued, and at that time the Libby Company was the "unconditional and sole" owner beyond question. Even if it were otherwise, the policy would not be avoided by an outstanding agreement such as the one complained of in this case. Nothing short of a valid, enforceable contract, vesting in the purchaser a present legal or equitable interest in the property, accompanied by the possession or right of possession, would be held to make the title of the Libby Lumber Company anything less than "unconditional and sole ownership." A party is still the "unconditional and sole owner" although there are outstanding liens and encumbrances. (2 Cooley's Briefs on Insurance, p. 1378, 6 Id., p. 477.) Such clause is not violated by the delivery of a deed in escrow. (*Davis* v. *Pioneer Furn. Co.*, 102 Wis. 394, 78 N. W. 596.) An irrevocable option is not a breach. (*Phenix Ins. Co.* v. *Kerr*, 129 Fed. 723, 66 L. R. A. 569, 64 C. C. A. 251; *National Fire Ins. Co.* v. *Three*

*States Lum. Co.,* 217 Ill. 115, 108 Am. St. Rep. 239, 75 N. E. 450.)

The provision of the policy making it void "if any change * * * take place in the interest, title, or possession of the subject of the insurance, etc.," is a promissory warranty or condition subsequent, intended to create a forfeiture. The reluctance of the courts to enforce forfeitures is emphasized by the authorities construing this provision. (2 Cooley's Briefs on Insurance, p. 1482; 6 Id., p. 500; 14 Ruling Case Law, sec. 292; 26 Corpus Juris, p. 198.)

The warranty against "change of possession" relates to a legal change—a transfer of the legal possessory right. (2 Cooley's Briefs on Insurance, 1723, 1724; 6 Id., p. 544; 26 Corpus Juris, p. 242; *Rumsey* v. *Phoenix Ins. Co.,* 1 Fed. 396, 17 Blatchf. 527; *McGinnis* v. *St. Paul F. & M. Ins. Co.,* Pa. Sup. Ct. 390; *Aetna Ins. Co.* v. *Aston,* 123 Va. 327, 96 S. E. 772.) The courts are in harmony upon the proposition that, to work such a forfeiture, there must appear a completed and enforceable contract, valid and unconditional, conveying to the purchaser a present legal or equitable title, with legal right of possession.

A contract that is incomplete, or conditional, or creates an escrow, or amounts to nothing more than an option, so that neither a present legal or equitable interest or estate is created in the prospective purchaser, or no legal right to immediate possession is transferred, will not be permitted to work a forfeiture. (*Moore* v. *St. Paul F. & M. Ins. Co.,* 176 Iowa, 549, 156 N. W. 676; *Pomeroy* v. *Aetna Ins. Co.,* 86 Kan. 214, Ann. Cas. 1913C, 170, 38 L. R. A. (n. s.) 142, 120 Pac. 344; *German Fire Ins. Co.* v. *Duncan,* 140 Ky. 27, 130 S. W. 804; *Walton* v. *Phoenix Ins. Co.,* 162 Mo. App. 316, 141 S. W. 1138; *Philadelphia Underwriters etc. Agency* v. *Moore* (Tex. Civ. App.), 202 S. W. 990; *Pioneer Savings & Loan Co.* v. *Providence Washington Ins. Co.,* 17 Wash. 175, 38 L. R. A. 397, 49 Pac. 231; *Mackintosh* v. *Agricultural Ins. Co.,* 150 Cal. 440, 119 Am. St. Rep. 234, 89 Pac. 102; *Zeitler* v. *Concordia Fire Ins. Co.,* 169 Mich. 555, 135 N. W. 332.)

MR. JUSTICE GALEN delivered the opinion of the court.

This action was instituted to recover upon a policy of fire insurance because of the destruction by fire of a certain mill and grain elevator building located in the town of Geraldine. Upon issue joined, the cause was tried to a jury and resulted in a verdict in favor of the plaintiff for the full sum of $3,000, the principal amount of the policy, together with interest at the rate of eight per cent per annum from January 15, 1923, being sixty days after proofs of loss were finally submitted.

The defendant has assigned twenty-eight alleged errors committed by the court as reason for a reversal of the judgment. In order to dispose of the determinative questions presented, an understanding of the facts as disclosed by the record is necessary. The policy of insurance forming the basis of this action was written by the defendant company on a standard form at the request of the Libby Lumber Company, by which the premium was paid, and as issued it purports by its terms to insure the Farmers' Elevator & Milling Company, a corporation, "for the term of one year from the 1st day of December, 1921, at noon, to the 1st day of December, 1922, at noon, against all direct loss or damage by fire," for the principal sum of $3,000, on the frame elevator and flour-mill building situated on certain lots, particularly describing them. It is therein provided that "loss, if any, subject to all the terms and conditions of this policy, is payable to Libby Lumber Company of Minneapolis, Minn." Subsequent to the issuance of such policy by the defendant company, on March 1, 1922, an indorsement or rider was attached thereto reading: "Owing to the fact that title has passed to the Libby Lumber Company within policy is hereby amended to read in favor of Libby Lumber Company as principal, and all loss payable and mortgage clauses are hereby eliminated. Otherwise to remain as written." This rider was made in consequence of the fact that on January 7, 1922, a sheriff's deed to the property had been executed and delivered to the plaintiff. Among other conditions contained in the policy are the following:

[79 Mont. 166.]

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if  *  *  * the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple;  *  *  *  or if any change, other than by the death of an insured, take place in the interest, title, or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment or by voluntary act of the insured, or otherwise."

The property insured had for several years belonged to the Farmers' Elevator & Milling Company. However, on November 18, 1920, a decree of foreclosure of a mechanic's lien against it was by the court entered in favor of the Libby Lumber Company, and on December 20, 1920, the property was sold on execution by the sheriff to the Libby Lumber Company, and a sheriff's certificate of sale was thereupon issued and delivered to the purchaser. The limitation of time for redemption before the purchaser was entitled to a sheriff's deed to the property did not expire until December 20, 1921. On May 20, 1921, the Farmers' Elevator & Milling Company by deed conveyed all of its title to the property to B. K. Johnson, trustee, "subject to all liens and encumbrances appearing of record." B. K. Johnson was the cashier of the Montana State Bank of Geraldine, and, as trustee, since 1919 was in possession of the property representing the creditors of the Farmers' Elevator & Milling Company, including that bank, and also the stockholders of the elevator company. The Libby Lumber Company was a secured creditor of the elevator company and had been such since 1917, when its claim of lien was filed. During the entire period of time involved in this litigation Johnson was in possession of the property, and the Farmers' Elevator Company was indebted to the Bank of Geraldine to the extent of $10,000 or $12,000. On December 30, 1921, the Libby Lumber Company entered a written contract with the Montana State Bank of Geraldine, designated an "escrow agreement," by the terms of which the Libby Lumber Company agreed to sell and the bank agreed

to purchase the property at the stipulated price of $6,355.05. The salient features of this contract are as follows: The bank agreed to forthwith execute its certificate of deposit dated January 2, 1922, in favor of the Libby Lumber Company for the principal sum of $6,355.05, payable on October 31, 1922, with interest at the rate of six per cent per annum from January 1, 1922, until paid, which certificate of deposit was to be delivered to the Northwestern National Bank of Minneapolis, Minnesota, and "held by said bank in escrow for final delivery to said Libby Lumber Company on October 31, 1922, unless cash is delivered on said day to said Libby Lumber Company in lieu thereof," it being further agreed that the Libby Lumber Company should execute a quitclaim deed conveying its title to the property to the Montana State Bank of Geraldine, which deed was to be deposited with the Northwestern National Bank of Minneapolis, Minnesota, for final delivery to the Montana State Bank of Geraldine on October 31, 1922, provided the certificate of deposit had been fully paid with interest on that date. If the certificate of deposit was not paid in accordance with the agreement on or before October 31, 1922, then it was specifically understood and agreed that the Libby Lumber Company should be entitled to have delivered to it by the escrow-holder both the certificate of deposit and the deed, and that the certificate of deposit should thereupon "become the absolute property of the Libby Lumber Company, which shall have the right to proceed for collection thereof as it may be advised." The certificate of deposit and the deed referred to in this contract were executed at about the date of the agreement and were deposited with the Northwestern National Bank of Minneapolis in accordance with the terms of the contract.

It appears that this agreement was so executed by the Libby Lumber Company with the Bank of Geraldine in order that the bank as a creditor of the Farmers' Elevator Company might better protect itself from loss. The purpose was to give the bank time beyond the period of redemption to obtain title to the property upon payment to the Libby Lumber

Company of the amount actually due it, admittedly greatly less than the real value of the property. And by virtue of this transaction the bank increased its recognized assets $10,000. The certificate of deposit so issued has not been paid, and, the escrow agreement not having been carried out by the Bank of Geraldine, both the deed and the certificate of deposit were delivered to the Libby Lumber Company and are now held by it. On August 23, 1922, the buildings on the property were totally destroyed by fire occasioning a loss conceded to be in excess of $17,000. It is the defendant's contention that the agreement executed by the Libby Lumber Company with the Montana State Bank of Geraldine constituted "an executory contract of sale, enforceable by either of the parties to the agreement"; that it is clearly a contract by the terms of which the lumber company agreed to sell and the bank agreed to buy "the property at an agreed price and on specific terms." It is argued by it that, from the admitted facts it is clear that when the insurance policy was issued, on December 1, 1921, insuring the interest of Farmers' Elevator & Milling Company as the sole and unconditional owner, said corporation had no interest whatever in the property insured. The sheriff's certificate of sale thereof had been issued December 20, 1920, and the time for redemption expired December 20, 1921, but even its right of redemption had been transferred to B. K. Johnson, trustee, on May 20, 1921. Hence it not only was not the sole and unconditional owner of the property, but it did not have an insurable interest therein. The fact that a loss payable clause was attached to the policy in favor of Libby Lumber Company did not insure any interest of the Libby Lumber Company. It only insured whatever interest Farmers' Elevator & Milling Company had in the property on December 1, 1921, and it had none. The loss payable clause in favor of Libby Lumber Company was therefore worthless, and the policy was void. On December 21, 1921, the period of redemption having expired, Libby Lumber Company became the sole and unconditional owner of the property, but it ceased to be such on December 30, 1921. That because the Libby Lumber

Company was not the sole and unconditional owner of the property when the indorsement of March 1, 1922, was added to the policy, "and because it failed to have described in the policy its insurable interest, the policy was still void on and after March 1, 1922, and at the time of the fire. There never was a time during the entire history of the policy, when it correctly described the insurable interest to be insured, and it was therefore void from its inception, and remained void at all times thereafter."

The court construed the contract made by the Libby Lumber Company with the Montana State Bank of Geraldine for the sale of the property to amount to an option to purchase and nothing more, and so instructed the jury.

After a careful examination and consideration of the defendant's numerous assignments of error, we are of opinion that the only question meriting consideration in disposition of this appeal is whether the execution of the so-called "escrow agreement" by the Libby Lumber Company for the sale of the property to the Montana State Bank of Geraldine constituted a violation of the terms and conditions of the policy respecting the ownership of the property insured, sufficient to discharge the defendant from liability. Confining ourselves to the language employed in the policy, the question is: Did the execution of such escrow agreement work a transfer of title to the property so that the interest of the insured therein can be said not to have been an "unconditional and sole ownership," or bring about a change "in the interest, title, or possession" of the property insured?

We enter upon a consideration of the question, having in [1, 2] mind the elementary principles that "the sole object of insurance is the indemnity of the insured, and if he has no insurable interest the contract is void" (Sec. 8075, Rev. Codes 1921); "an interest insured must exist when the insurance takes effect, and when the loss occurs" (Id., sec. 8076); and that contracts of insurance are to be most liberally construed in favor of the insured (*Holter Lumber Co.* v. *Fireman's Fund Insurance Co.*, 18 Mont. 282, 45 Pac. 207; *Mc-*

*Auley* v. *Casualty Co. of America,* 39 Mont. 185, 102 Pac. 586). In the *Holter Case* above cited, Mr. Justice Hunt, speaking for the court, quotes approvingly the rule as stated by Judge May in his treatise on Insurance, section 175, as follows: "No rule in the interpretation of a policy is more fully established, or more imperative and controlling, than that which declares that in all cases it must be liberally construed in favor of the insured, so as not to defeat without a plain necessity his claim to the indemnity, which in making the insurance was his object to insure." The author in further discussing the rule states that: "When the words are, without violence, susceptible of two interpretations, that which will sustain his claim and cover the loss must, in preference, be adopted." (Sec. 175.)

"Since the courts have generally been inclined to treat representations liberally for the benefit of insured, insurer has sought to strengthen its own position by including in the policy various phrases descriptive of the quantity and quality of ownership, the current standard form reciting that the policy shall be void if the interest of insured is not truly stated or is other than unconditional and sole ownership. Stipulations of this nature, although they have received uniformly a strict and technical construction, have been held reasonable and valid, and a breach thereof will void the policy ab initio, although insured had no knowledge of the conditions, or thought them immaterial. Where such conditions are contained in the policy, and there is no statement of the title or specific interest an acceptance of the policy amounts to a representation by insured that his title or interest is that stated in the condition, and if his title or interest is substantially different, the insurance is voided." (16 C. J. 170.)

The terms used in the policy, respecting the insured's "unconditional and sole ownership" of the property, can only [3] have reference to the state of the title when the policy was written, or, as applied to the facts in this case at the time the rider was attached to the policy on March 1, 1922. The language of the policy is that it "shall be void *if the interest* of the insured *be* other than unconditional and sole ownership."

And the rider by its terms clearly has reference to a *present title status*, for it reads, "owing to the fact that title has passed to the Libby Lumber Company." Thus a change in the title to the property from what it was *at the time* the policy was written is acknowledged *as a present fact*.

Quite generally the courts are in accord with this construction of the language employed in similar contracts; i. e., that they constitute representations *in praesenti*. (*Collins* v. *London Assurance Co.*, 165 Pa. 298, 30 Atl. 924; *Insurance Co. of North America* v. *O'Bannon*, 109 Tex. 281, 1 A. L. R. 1407, 206 S. W. 814; *Rosenstock* v. *Mississippi Home Ins. Co.*, 82 Miss. 674, 35 South. 309; *Downs* v. *German Ins. Co.*, 6 Penne. (Del.) 166, 67 Atl. 146; *Fidelity-Phoenix Fire Ins. Co.* v. *O'Bannon* (Tex. Civ. App.), 178 S. W. 731; 2 Cooley's Briefs on Insurance, p. 1471.)

This being the proper interpretation to place on the language employed, it is clear that the Farmers' Elevator [4] Company was not the "unconditional and sole" owner of the property on December 1, 1921, when the policy was issued. As a result of the sheriff's certificate of sale theretofore issued on December 20, 1920, the purchaser at the execution sale, Libby Lumber Company, was substituted for and acquired all of the right, title and interest of the judgment debtor to the property (sec. 9441, Rev. Codes 1921; *Hamilton* v. *Hamilton*, 51 Mont. 509, 154 Pac. 717; *Banking Corporation* v. *Hein*, 52 Mont. 238, 156 Pac. 1085; *Power Merc. Co.* v. *Moore Merc. Co.*, 55 Mont. 401, 177 Pac. 406; *State ex rel. Hopkins* v. *Stephens*, 63 Mont. 318, 206 Pac. 1094; *Citizens' National Bank* v. *Western L. & B. Co.*, 64 Mont. 40, 208 Pac. 893), subject to the statutory right of the judgment debtor or other redemptioner to redeem (sec. 9443, Rev. Codes 1921). After the issuance of the sheriff's certificate of sale and during the lapse of the period of time allowed for redemption, Johnson's possession of the property was merely that of a tenant at sufferance of the purchaser at the execution sale. (*Power Merc. Co.* v. *Moore Merc. Co.*, supra; *Citizens' Nat. Bank* v. *Western L. & B. Co.*, supra.)

However, upon the issuance and delivery of the sheriff's deed on January 7, 1922, Johnson, trustee, was entirely divested of title to the property and right of possession, and his continued possession subsequently could have been only as the representative of the Bank of Geraldine under the terms of the escrow agreement. His trusteeship of the property terminated after the sheriff's sale thereof on execution, and his continued possession after the date of the escrow agreement, December 30, 1921, necessarily must have been as the representative of the Bank of Geraldine, of which bank he was the cashier. Such being the respective rights of the parties, the [5] question for determination is whether on March 1, 1922, the date the rider was attached to the policy, the Libby Lumber Company was the "unconditional and sole" owner of the property, or had a change been brought about which divested it of "interest, title, or possession" of the property? It seems clear that it was not the sole and unconditional owner of the property when the policy was originally issued, and that fact is given recognition in the policy itself; however, the question is: Was it the "unconditional and sole" owner of the property when the rider was executed by the defendant company? Reluctant though we are to hold against the right of the insured to recover on the policy, we are constrained to hold that the Libby Lumber Company was not such owner, for by the terms of the escrow agreement with the Bank of Geraldine, dated December 30, 1921, it had made a sale of the property by an enforceable executory contract of sale by which a change in title was effected. Under all of the authorities the determinative question is: Upon whom would the loss fall in case of a fire before the expiration of the time fixed by the escrow contract for payment of the agreed purchase price? A reference to the provisions of that agreement solves the problem, and makes it clear that the Bank of Geraldine would be the loser. The Libby Lumber Company was given a complete and unconditional right to collect the agreed purchase price from the Bank of Geraldine, whatever might become of the property subsequent to the execution of the escrow agreement,

and the Bank of Geraldine could have enforced specific performance of the contract. On October 31, 1922, in the event the agreed purchase price was not fully paid, the certificate of deposit was by the escrow-holder to be delivered to the Libby Lumber Company and become its "absolute property," with right to "proceed for collection thereof."

"An alienation of insured property will end the policy as to the assured, if he retains no further interest in the property; but, if an interest is still retained, the policy, in the absence of special stipulations to the contrary, will cover and protect that interest, and dealings with the property not calculated to produce changes in ownership or supply a motive to destroy or weaken the interest of the insured will not ordinarily avoid the policy. * * * The forms of policies now in general use, however, provide that they shall become void on any change in title or interest. 'As special clauses against alienation or change of title in insurance policies operate by way of forfeiture, they are to be construed strictly; and the right to insist on such forfeiture is *stricti juris,* and liberal intendments and enlarged constructions will not be indulged in favor of such forfeitures. A condition that the policy shall be void if, without the consent in writing of the insurer, the property shall be sold, is valid, but to avoid the policy the sale must be such as passes title to the property insured. Under a condition that the policy shall be void if any change other than by the death of the insured takes place in the 'interest, title or possession of the subject of the insurance,' the word 'interest' has the same meaning as in the legal phrase 'right, title and interest,' and means a proprietary or insurable interest, and not a mere sentimental interest. Such condition is not broken so long as the insured continues to be the sole owner of the property insured." (14 R. C. L., pp. 1114, 1115.)

The clause as to sole and unconditional ownership contemplates a beneficial and practical ownership. Such ownership is in those on whom the loss would certainly fall not as a matter of mere contract obligation, but as the result of real bona fide rights in the property. Insured's ownership is "sole" when

no one other than insured has any interest in the property as owner, and is "unconditional" when the quality of the estate is not limited or affected by any condition.   (*Bacot* v. *Phoenix Ins. Co.*, 96 Miss. 223, Ann. Cas. 1912B, 262, 25 L. R. A. (n. s.) 1226, 50 South. 729; *Rochester German Ins. Co.* v. *Schmidt*, 162 Fed. 447, 89 C. C. A. 333, reversing (C. C.) 151 Fed. 681; 6 Cooley's Briefs on Insurance, Supp., sec. 1371, p. 473.)

"Where a policy provides that it shall be void in case of a change of interest, title, or possession, without the consent of the insurer, a change of interest avoids the policy as effectually as a change of title.   The doctrine that there is no breach of the provision against change of title so long as the insured retains title has no application to the condition against a change of interest, since the term 'interest' embraces both legal and equitable rights, and if the insured parts with the absolute control and dominion over the property, without the consent of the insurer, the condition is violated.   Such provision refers, however, to some change of interest which would make the loss fall upon some other person, so that the insured would lose his disposition to maintain and protect the property; it does not refer to a mere right which another party may acquire, which does not change the risk in case of loss, such as an option to purchase."   (14 Cal. Jur., sec. 75, p. 514.)

"The interest of a purchaser under an executory contract of sale is the sole and unconditional ownership, within the true meaning of the ordinary clause on that subject in insurance policies, because the vendor may compel the vendee to pay for the property and to suffer any loss that occurs.   *   *   *   *A fortiori,* one who has contracted to sell real estate to another who can enforce specific performance is not the unconditional and sole owner of the property, although the record title is still in his name."   (14 R. C. L., sec. 234, p. 1058.)

The change of interest referred to in the policy, in view of the rules which frown upon forfeitures and require that insurance policies shall be strictly construed against the insurers, means some change which would cause the loss by fire to fall on the buyer, and does not relate to a grant by the insured of

some right which does not change the party carrying the risk
nor give the grantee more than a mere option to purchase
the property. (*Mackintosh* v. *Insurance Co.,* 150 Cal. 440,
119 Am. St. Rep. 234, 89 Pac. 102; *House* v. *Insurance Co.,*
145 Iowa, 462, 121 N. W. 509; *Terminal Ice & Power Co.* v.
*American Fire Ins. Co.,* 196 Mo. App. 241, 194 S. W. 722;
Id. (Mo. App.), 187 S. W. 564. See, also, *Terminal Ice &
Power Co.* v. *Commercial Fire Ins. Co.,* 196 Mo. App. 516,
196 S. W. 408; Id. (Mo. App.), 187 S. W. 569.)

The authorities appear to be in accord that, to work a for-
feiture, there must be a completed and enforceable contract,
valid and unconditional, conveying to the purchaser a present
legal or equitable title, with legal right of possession. There
is a marked reluctance on the part of the courts to enforce a
forfeiture under such a policy provision, unless the contract
claimed to have been breached is clearly a contract of sale,
and not an option or a contract to sell, wholly free from
doubtful construction. Such provision refers to some change
of interest which makes the loss fall upon another person, so
that the insured would lose his disposition to maintain and
protect the property. It has no application to a mere right
which another may acquire to purchase the property, which
does not change the risk in case of loss. (14 Cal. Jur. 514.)

The rule is established by a long list of authorities that a ven-
dee in possession under an executory contract for the purchase
of property is considered as an absolute owner or an owner in fee.
(1 and 2 Cooley's Briefs on the Law of Insurance, p. 1354.)
Where, as in this case, the vendee is in possession under an
executory contract armed with the right to go into a court
of equity and obtain an absolute unconditional legal estate, on
discharge of the quasi-mortgage for the purchase money, he
is an owner in fee simple. Thus, in *Lingenfelter* v. *Phoenix
Ins. Co.,* 19 Mo. App. 252, where, under a contract for the
sale of land, the deed was deposited in escrow for the payment
of the purchase money, and the vendee had been already placed
in possession, the court held that the facts showed that he had
at least a full equitable title, which would support an action

for a legal title. It was said, in *Imperial Fire Ins. Co.* v. *Dunham,* 117 Pa. 475, 2 Am. St. Rep. 686, 12 Atl. 668, that, even if the insured had made no payments on his contract, his title must be regarded as equivalent to a fee simple; the unpaid purchase money being treated merely as an encumbrance.

Differences and distinctions must be drawn between the sale of lands, an agreement to sell, and an option to purchase. In the case of *Ide* v. *Leiser,* 10 Mont. 5, 24 Am. St. Rep. 17, 24 Pac. 295, this court said: ''The first is the actual transfer of title from grantor to grantee, by appropriate instrument of conveyance. The second is a contract to be performed in the future, and, if fulfilled, results in a sale. It is a preliminary to a sale, and is not the sale. Breaches, rescission, or release may occur, by which the contemplated sale never takes place. The third, an option, originally, is neither a sale, nor an agreement to sell. It is simply a contract, by which the owner of property (real estate being the species we are now discussing) agrees with another person that he shall have the right to buy his property, at a fixed price, within a time certain. He does not sell his land; he does not then agree to sell it; but he does then sell something, viz., the right or privilege to buy at the election, or option, of the other party. The second party gets *in praesenti,* not lands, or an agreement that he shall have lands, but he does get something of value, that is the right to call for and receive lands, if he elects. The owner parts with his right to sell his lands (except to the second party) for a limited period. The second party receives this right, or rather, from his point of view he receives the right to elect to buy. That which the second party receives is of value, and in times of rapid inflations of prices, perhaps of great value.''

'' 'An option is a right acquired by contract to accept or reject a present offer within a limited or reasonable time in the future.' (21 Am. & Eng. Ency. of Law, 2d ed., 924; *Ide* v. *Leiser,* 10 Mont. 5, 24 Am. St. Rep. 17, 24 Pac. 695;

*Black* v. *Maddox,* 104 Ga. 157, 30 S. E. 723.)'' (*Snider* v. *Yarbrough,* 43 Mont. 203, 207, 115 Pac. 411, 412.)

"And it is held that the interest of an owner of property which another holds under an option to purchase, which is irrevocable by the owner, but which the holder of the option has not bound himself to accept, and which he is free to abandon, is the sole and unconditional ownership of the property within the proper interpretation of a clause on that subject in insurance policies, because the owner cannot compel the holder of the option to take the property or suffer the loss." (27 R. C. L., p. 334, sec. 31.)

It is clear to us that the escrow agreement involved con-
[6] tains none of the elements of an option, but is, rather, an executory contract, enforceable by either of the parties; and, considered as such, it necessarily effected a change in the "interest, title or possession of the subject of insurance"; the escrow contract effected a sale of the Libby Lumber Company's right, title, interest and possession of the property; and the deed in escrow under the language employed in the escrow agreement constituted merely an equitable mortgage as security for the payment of the agreed purchase price by the Bank of Geraldine. The insured had effectually disposed of its interest in the property by virtue of the escrow agreement of December 30, 1921, prior to the execution of the rider to the policy dated March 1, 1922, and therefore the plaintiff cannot recover, as it was not possessed of an insurable interest in the property at the time of the execution of the rider to the policy or at the time of the fire loss. The Libby Lumber Company may sue and obtain a judgment for the amount due on the certificate of deposit, and the financial loss incident to the fire necessarily falls upon the Bank of Geraldine.

From that which has been stated relative to the law of the case applicable to the facts, it is clear that the plaintiff was the unconditional and sole owner of the property insured between December 20, 1920, the date it made purchase of the property at sale on execution, and December 30, 1921, the date it sold the property to the Bank of Geraldine, by virtue of the

escrow contract. Therefore, when the rider was executed on March 1, 1922, and at the time of the fire, equitable title to and possession of the property were vested in the Bank of Geraldine. Clearly there was a breach of warranty such as to avoid liability on the policy.

It must be held that at the time of the execution of the rider to the policy the Libby Lumber Company was not, as it warranted by the acceptance of the policy, "unconditional and sole" owner of the property insured, as a change of its title was effected by the escrow contract of December 30, 1921.

Our views herein expressed dispose of the law of the case, and render unnecessary a consideration of the defendant's assignments of error presenting other questions. For the reasons stated the judgment is reversed and the cause remanded to the district court of Cascade county, with directions to enter judgment in favor of the defendant for its costs.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and MATTHEWS concur.

Rehearing denied May 6, 1927.