Koch and another, Respondents, vs. TRANSCONTINENTAL INSURANCE COMPANY and others, Appellants.

*October 15—November 10, 1936.*

For the appellants there was a brief by *Crawford & Crawford* of Superior, and oral argument by *Raymond A. Crawford*.

For the respondents there was a brief by *O'Melia & Kaye* of Rhinelander, attorneys for Elizabeth K. Young, and *Earl A. Korth* of Rhinelander, attorney for O. H. Koch, and oral argument by *Mr. Walter F. Kaye* and *Mr. Korth*.

FAIRCHILD, J. The first defense is based on a claim of concealment and misrepresentation of material facts. Appellant contends that at the time of the application for insurance, which was purely oral, insured's agent made a false statement with reference to the cancellation of policies previously in force and secured through the North Wisconsin Insurance Agency. A review of the testimony shows that insured had for some years prior to the issuing of the policies by appellants been insured by companies dealing through the North Wisconsin Insurance Agency; that a claim for loss caused by hail had been disputed; that some controversy had developed over the collection of premiums; that the North Wisconsin Insurance Agency notified respondent Young of their intention to reduce the amount of the insurance; that respondent Young wrote to the agency directing it to cancel all the insurance. The letter is as follows:

"According to Mr. J. H. O'Melia's letter of February 5th after you were over to see him in regard to the insurance that you told him that even though the arrears is paid up his company would not care to carry more than about $3,500 on the Main Lodge and furniture.

"Since that is the case Mr. Estabrook I wish you would cancel all the policies as I don't expect you to tell me how much I should carry on these buildings as nobody but Mr. Young and myself knows how much money we have invested in this place. I am also writing to Mr. O. H. Koch regarding the insurance."

It was after this that negotiations were begun by insured with the appellants to secure the insurance which is the basis of the claim on the part of insured. The agent of appellants was informed of the previous insurance and of its cancellation. Insured's agent did say that the cause of breaking off relations with the North Wisconsin Insurance Agency was the controversy over the hailstorm loss, and did not mention

any difficulty that may have arisen because of delay in payment of premiums. A representative of the North Wisconsin Insurance Agency testified, in part: "The main reason for the cancellation of those policies was we couldn't get our money for the premiums." Apparently one party to the dispute was moved to end the business relation for one reason, and the other for a different reason, seeming to her a sufficient cause. Under the impression that ill-feeling which had arisen because of the hail loss dispute prompted the acts of the agency complained of in the letter quoted above, insured's husband naturally stated that as the reason for cancellation when discussing with appellants' agent the matter of insurance by his companies. It cannot be said that insured's failure to ascertain and correctly describe to appellants the reason for the dissatisfaction of the North Wisconsin Insurance Agency with her business is such concealment as to make the policies void. The appellants were advised that the property had been insured by companies represented by the North Wisconsin Insurance Agency; that that insurance had been canceled by direction of insured after a dispute had arisen between her and that agency. The property was not over insured. There cannot be said to be a showing of misrepresentation with regard to this previous insurance.

Appellant claims concealment on the part of insured of the fact that judgment of foreclosure and sale had been entered against the property. The fact, however, was not known to her. The insured knew the action had been commenced, had talked with a lawyer, and had been assured that the extended redemption would give her an opportunity to adjust her obligation to the mortgagee. The existence of the mortgage was disclosed. The fact that a foreclosure was pending when the present policies were issued gives no advantage to appellants under the circumstances made to appear by the evidence here. Appellants had knowledge of the mortgage. By the terms of the policy, the loss, if any, was payable to the mortgagee as

his interest appeared. The existence of the mortgage was discussed. The pendency of the suit to foreclose was not. The proceedings in the foreclosure suit had not changed the insured's title to the real estate. She was still the owner; nothing had occurred to divest her of or to place the title in any other person.

Appellants make a further claim of concealment in that insured's husband, in making the application, did not disclose the fact that insured's title was incumbered by a second mortgage and a judgment lien. Apparently no questions were asked leading to the disclosure of these incumbrances, and there was accordingly no misrepresentation and no active concealment. It is to be remembered that there was no written application for this insurance, and that the policies here involved were issued with knowledge on the part of appellants' agent of the general condition of the property, its location, and its worth. The agent knew that the new insurance would take the place of that recently carried by other companies. Questions asked were truthfully answered.

Appellants' second ground of defense is based upon a provision of the policy that:

"This entire policy shall be void, unless otherwise provided by agreement in writing added hereto, (a) if the interest of the insured be other than unconditional and sole ownership."

Appellants contend that since suit to foreclose the mortgage to which the property was subject had been begun and judgment entered June 27, 1934, insured was not the unconditional and sole owner when the policies were issued in February, March, and April, 1935.

The question accordingly arises: Is the title of a mortgagor after foreclosure and during the period of redemption unconditional and sole ownership within the meaning of this provision of the insurance contract? It has been held in Wisconsin that the equitable ownership of a vendee under a land contract is such unconditional and sole ownership, *Mat-*

*thews v. Capital Fire Ins. Co.* 115 Wis. 272, 91 N. W. 675; *De Keyser v. National Liberty Ins. Co.* 216 Wis. 566, 257 N. W. 673; and that the interest of a mortgagor is such unconditional and sole ownership, *Wolf v. Theresa Village M. F. Ins. Co.* 115 Wis. 402, 91 N. W. 1014. No case in this state has dealt with the problem arising after judgment of foreclosure of the mortgagor's interest and before the period of redemption has expired. It is true that in *Friede v. Mercury Ins. Co.* 201 Wis. 65, 228 N. W. 749, one who appeared to be a vendee under a land contract was held not to have unconditional and sole ownership when almost wholly in default. That situation differs from this, however, in that legal title is in the insured in this case, while in the *Friede Case* not even the land contract had been delivered to the vendee. It may be said that in the *Friede Case,* the insured was held to lack ownership, and that that case is no authority as to a definition of what is unconditional ownership where ownership is admitted.

In the case of *Steinmeyer v. Steinmeyer,* 64 S. C. 413, 42 S. E. 184, an insolvent debtor had conveyed to defendant without consideration. Creditors obtained a decree subjecting the property to sale, so far as necessary for the payment of the judgment claims. The defendant subsequently insured the property against loss by fire by a policy void by its terms if the ownership of the insured were other than unconditional and sole. In this situation the South Carolina court held that defendant's interest was unconditional because she had a fee simple. The defendant's status at the time of the insurance was that—

"of one holding the fee subject to an incumbrance, the equity of the grantor's creditors. The existence of a lien or incumbrance on the insured's property is not a breach of the condition which requires sole and unconditional ownership."

It would seem that the situation of the land conveyed in fraud of creditors and made subject to sale by a decree would

be similar to that of the land of insured, which is subject to sale by judgment of foreclosure. Whether the same rule would obtain if the property had been sold, subject only to a right of redemption, is another problem, a Montana case indicating that it would not. In that case, where property had been sold on execution, subject to a right of redemption, the debtor was held not to have sole and unconditional ownership. *Libby Lumber Co. v. Pacific States Fire Ins. Co.* 79 Mont. 166, 255 Pac. 340. In the situation before us, however, title has not passed; there having been no sale.

In *Phenix Ins. Co. v. Hilliard,* 59 Fla. 590, 52 So. 799, the following test is laid down:

"The just and reasonable purpose of insurance policies in requiring the insured to have the 'unconditional and sole ownership' of the property insured, is to give protection to only those upon whom the loss insured against would inevitably fall but for the insurance, and to avoid taking risks for those whose lack of interest or whose contingent interest in the property insured might tend to encourage carelessness or wrong doing in the use or preservation of the property. . . .

"By fair construction and intendment the 'unconditional and sole ownership' of property for the purposes of insurance is in those upon whom the loss insured against would certainly fall, not as a matter of mere contract obligation, but as the result of real *bona fide* rights in the property insured."

In that view of the purpose of the provision of the contract requiring unconditional and sole ownership, such ownership would seem in the case at bar to have been in insured. The risk of loss was upon respondent Young. If the building burned, she would be the ultimate loser. If she redeemed the property from the foreclosure, she would have to pay the mortgagee's full claim, yet the property would be worth less by the amount of the loss. If she did not redeem, the proportion of the proceeds of sale coming to her would be reduced by the amount of the loss; or if the proceeds were in-

sufficient to pay the mortgage debt, she would be subject to a deficiency judgment so much the greater. Foreclosure made no sufficient difference in her ownership to warrant holding that it ceased to be unconditional and sole for the purposes of the insurance contract. She still had every motive to use full care in the use and protection of the buildings insured.

The first two grounds of defense would, if valid, result in the conclusion that the policies were void *ab initio*. But appellants' view cannot prevail.

Appellants further contend that the policies were later voided by the false swearing of the insured on the trial. Each policy provides:

"This entire policy shall be void . . . in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

Appellants' claim that there was false swearing on the part of insured is based on testimony given March 16, 1936, to the effect that the earlier policies of insurance were canceled because of a dispute over a hail loss. They seek to support that claim by showing that on February 14, 1935, she had written the letter quoted above, directing the policies to be canceled because of the fact that the "company would not care to carry more than about $3,500 on the Main Lodge and furniture." In the light of the circumstances discussed with reference to the defense that insured was guilty of concealment when her husband told appellants' agent that the previous policies had been canceled because of a dispute over a hail loss, there exists no such contradiction by the letter referred to or other evidence to substantiate a charge of false swearing.

Evidence of the familiarity of appellants' agent with the whole situation, the lack of any effort to mislead or to secure

the insurance by deceit or misrepresentation, nothing having occurred after the insurance contracts were entered into to affect their validity, sustains the conclusion of the trial court. Respondent continued to be the unconditional and sole owner of the premises. The facts with relation to the foreclosure proceedings shown by the evidence do not bring the case within the forfeiture clause. The defenses set up having been properly overruled and the amount of damages not being questioned, the correct judgment was ordered.

*By the Court.*—Judgment affirmed.