SOYLAND, et al, Respondents, v. THE FARMERS MUTUAL FIRE INSURANCE COMPANY OF TURNER COUNTY, Appellant

(26 N. W.2d 696)

(File No. 8894. Opinion filed April 7, 1947.)

Rehearing Denied May 5, 1947.

**Andrew S. Bogue,** of Parker, and **Danforth & Danforth,** of Sioux Falls, for Appellant.

**Harold Dwyer** and **Everett A. Bogue,** both of Vermillion, for Respondents.

RUDOLPH, J. The plaintiffs recovered under a certain policy of fire insurance for the loss sustained due to the destruction by fire of a dwelling. Defendant has appealed.

The questions presented relate to certain acts subsequent to the issuance of the policy which it is contended vitiated the policy. The material facts are as follows: The defendant is a mutual insurance company and on March 16, 1945, issued its policy insuring plaintiffs against loss by fire of certain buildings located on farm land owned by plaintiffs. On April 26, 1945, plaintiffs sold the land upon which the buildings were located, but retained ownership of the building under an agreement wherein plaintiffs were designated as parties of the first part, which agreement is as follows: "* * * first parties are to retain title to all buildings on

the said premises except two old frame sheds and the windmills; the first parties are to have the right to remove from said premises all other buildings including the house, barn, crib, etc. And the said parties of the first part agree to remove all such buildings from the above premises on or before March 1, 1946; if not removed by that time, the same shall become the property of the second parties." The insurance company had no knowledge of the sale of the land.

The policy of insurance contained the following provisions: "This entire policy, * * * shall be void * * * if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple; * * * or if any change, other than by the death of the insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard) whether by legal process or judgment or by voluntary act of the insured, or otherwise; * * *."

The dwelling with which we are here concerned was insured under a valued policy for $2,000, and was totally destroyed by fire on June 4, 1945. Following the sale of the land upon which the house was located it was vacated by the tenants and was vacant at the time of the fire. On the day before the fire the plaintiffs offered to sell the house for $1,000.

It is the contention of appellant that the policy was void at the time of the fire by virtue of the sale of the real estate and the transfer of possession of the real estate upon which the structure was located. With reference to the provisions of the policy which provide that the policy shall be void "if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple," courts hold generally, so far as we have been able to determine, that these provisions refer to the time of the issuance of the policy, not to the time of the fire. Insurance Co. of North America v. O'Bannon, 109 Tex. 281, 206 S. W. 814, 1 A. L. R. 1407; De Keyser v. National Liberty Ins. Co., 216 Wis. 566, 257 N. W. 673, 97 A. L. R. 766; Libby Lumber Co. v. Pacific States Fire Ins. Co., 79 Mont. 166, 255 P. 340,

60 A. L. R. 1; Collins v. London Assurance Corporation, 165 Pa. 298, 30 A. 924. Appellant has cited the case of Wilson v. Aetna Ins. Co., La. App., 161 So. 650, but in that case the ownership of insured was not in fee simple at the time the policy was issued. This general holding places a construction on the policy which avoids a forfeiture and in our opinion is the proper construction.

 The appellant further relies upon that provision of the policy which makes the policy void "if any change other than by the death of the insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard) whether by legal process or judgment or by voluntary act of the insured, or otherwise; * * *." · This provision of the policy obviously looks to the future, and we must determine whether the sale of the land on which the house was situated amounted to a change "in the interest, title or possession" of the house within the meaning of the policy.

The Texas court in the case of Insurance Co. of North America v. O'Bannon, supra [109 Tex. 281, 206 S. W. 815], was called upon to construe an identical policy provision under facts similar to those presented in this case. The court said [109 Tex. 281, 206 S. W. 815]:

"Given a reasonable construction, there was no change of 'interest' in the subject of this insurance. The Supreme Court of Kansas rightly interpreted the word 'interest' when it said: 'The word "interest," as used in the policy, is not synonymous with "title"; it means some right different from title; it cannot mean a greater estate than title, since title, as there used, was intended to mean the entire estate. It must therefore have been used with the meaning generally attached to it, when used in contradistinction to title, as "any right, in the nature of property, less than title." Anderson's Law Dict. 562. "In a narrower sense it was used, in the English common law of real property to designate a right less than an estate." [3] Century Dict. vol. 4, p. 3142. This we think is the sense in which it was used in the policy. In the interpretation of the policy this word is important. The form of the policy was intended to cover two classes of risks. There are large interests in real estate

owned by persons who have neither title nor possession. The form of this policy is adapted to the insurance of such interests, as well as to the insurance of property where the insured is the owner of the title. Where the insured is the owner of only an interest in the estate, the word "interest." used in the forfeiture clause has force, and any change in such interest would forfeit the policy; but where the insured is the owner of the title the word "interest" has no application. In the latter case, if any change takes place in the title, the policy is forfeited.' Garner. v. Milwaukee Mechanic's Ins. Co., 73 Kan. 127, 84 P. 717, 4 L. R. A., N. S., [654], 656, 117 Am. St. Rep. 460, 9 Ann. Cas. 459.

"We are equally sure there was no change of 'title' within the reason of the language embodied in this policy.

"Under the writings between defendant in error, joined by his wife, and the trustees, the title to the subject of insurance—i. e., the one-story frame dwelling—was in defendant in error at the date of the fire. Even where a forfeiture of the insured's title to certain buildings was expressly provided for, on failure to remove same by a fixed date, a United States Circuit Court sitting in Massachusetts refused to hold that there was any breach of this condition, upon the fire occurring prior to the expiration of the time allowed for the removal; the court declaring: 'The land is not insured, and if the actual property covered by the risk conforms to these various conditions as to absolute ownership it would seem to be sufficient. The assured owned the buildings originally, and it had never parted with any interest in them. While it had conveyed the land upon which they were situated to the city of Boston, it had not parted with either the title or possession of the property insured. It had only agreed that, if the buildings were not removed within a certain time, they should be forfeited. So far as appears, the asured was preparing to remove them within the time stated, unless a further extension should be granted. Until the ownership was taken away by forfeiture or otherwise, it would seem to be complete.' Washington Mills Emery Mfg. Co. v. Commercial Fire Ins. Co., C. C., 13 F. 646.

"On the same facts, the Supreme Court of Massachusetts reached the same conclusion, which it expressed in these words:

" 'It is not material whether the clause operates technically as an exception, or as an agreement detaching the buildings from the realty and making them personal property, which was to belong to, and be at the disposal of, the grantor. The buildings were not conveyed to the city, but remained the property of the plaintiff. It is not necessary to consider what would have been the rights of the parties after October 1, 1878 (the date for forfeiture of the insured's title for failure to remove the buildings), as the buildings were burned before that time.' Washington Mills Emery Mfg. Co. v. Weymouth [& B. Mut. F.] Ins. Co. 135 Mass. [503], 504."

Without opinion the Georgia court reached a conclusion apparently opposed to that reached in the Texas case. We agree with the comment on the Georgia case by the author of Vol. 4, Appleman on Insurance Law and Practice; he states, § 2747 at page 654 (note), "Texas, it would seem, reached a much sounder result in taking the opposite view."

The policy also provides, "\* \* \* if the hazard be increased by any means within the control or knowledge of the insured," the policy shall be void. In the case of Davenport v. Firemen's Ins. Co., 47 S. D. 426, 199 N. W. 203, 205, this court recognized two types of hazards, physical and moral, as coming within this provision of the policy. The court held that whether there is an increase in the physical hazard is a question of fact, but with reference to the moral hazard stated:

"On the other hand, what constitutes 'moral hazard' is a question of law and may be determined by the court. Moral hazard is the risk, the danger, or probability that the insured will destroy or permit to be destroyed the insured property for the purpose of collecting the insurance, and any change in the condition of the insured or the insured property that will increase the probability that the insured will destroy the property for the purpose of collecting the insurance will increase the moral hazard. Any act or change in the conditions that will increase the temptation to destroy

the insured property for the purpose of collecting the insurance will increase the moral hazard. So, too, will any act that reduces the value of the insured property in proportion to the amount of insurance or the procuring of insurance materially in excess of the reasonable cash value of the insured property."

We think it clear that there was no change in the physical hazard, the building and all surroundings were the same at the time of the fire as they were when the policy was issued. Was there an increase of the moral hazard? The facts upon which it is contended the moral hazard was increased are undisputed, and the question presented is whether we should determine as a question of law that these undisputed facts compel a holding that the moral hazard was increased. The facts which it is contended show the moral hazard was increased are the insuring of the house for $2,000, the sale of the land, and the offer to sell the house after the sale of the land for $1,000. It is argued that this court should take judicial notice that a structure immediately becomes less valuable when the land upon which it stands is sold and the structure must be moved. Appellant states, "To the personal knowledge of the writer of this brief, structures that had a permanent value when affixed to the real estate on which they were constructed of $10,000, when severed from the real estate and moved somewhere else, the value was at once reduced to $1,500." But on the other hand, we know and believe that because of undesirable or unsuitable locations or for other reasons, it often happens that buildings are of less value when affixed to the real estate on which they were constructed, than they are when available for moving from their fixed location. Especially is this true during these days of the housing shortage. Apparently it was true of these particular buildings; at least the purchaser of the land did not want them for use in connection with the land. We are, therefore, of the opinion that the fact which appellant asserts is the subject of judicial knowledge may and often could be successfully disputed by competent evidence. It is not permissible for the court to take judicial knowledge of a fact that may be diputed by competent evidence. 31 C. J. S.,

Evidence, § 9. It follows that the sale of land independent of the buildings does not in itself evidence an "act that reduces the value of the insured property in proportion to the amount of insurance," and there is nothing else in this record to evidence such fact, apart from the offer of respondents to sell the house, insured for $2,000, for $1,000. We do not believe that the trial court was impelled to determine that the offer to sell the house for less than its insured value was due to the sale of the land. The offer to sell for $1,000 might have been induced by many fortuitous circumstances. There is no evidence that respondents would not have made the same offer or was demanding a much higher price before the land was sold. The evidence discloses no relationship betwen the sale of the land and the offer to sell for less than the insured value, and absent such evidence, we believe it follows as a corollary to our holding that no basis exists upon which to judicially notice a reduction in value of structures because of a sale of the land upon which they stand, than an offer to sell insured structures for less than the insured value after the sale of the land does not compel a holding that it was the sale of the land that caused or induced such offer.

The judgment appealed from is affirmed.

All the Judges concur.

POLLEY, J., not sitting.