DA 07-0023

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 299

IN THE MATTER OF THE
MENTAL HEALTH OF E.T.,

     Respondent and Appellant.


APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DI 06-114 C
Honorable Stewart E. Stadler, Presiding Judge


COUNSEL OF RECORD:

     For Appellant:

          Christina Holte Larsen, Nick Aemisegger, Jr., Public Defenders;
Kalispell, Montana

     For Appellee:

          Hon. Mike McGrath, Montana Attorney General; C. Mark Fowler,
Assistant Attorney General; Helena, Montana

          Ed Corrigan, Flathead County Attorney; Katie F. Schulz,
Deputy County Attorney; Kalispell, Montana


                          Submitted on Briefs:  October 31, 2007

                                Decided:  August 20, 2008


Filed:

               _____
                         Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     E.T. appeals the District Court's ruling which denied him the opportunity to present evidence and testimony at his initial appearance to challenge the probable cause for the County's petition to have him involuntarily committed. We affirm.

¶2     We restate the issue as follows:

¶3     Did the District Court err by denying E.T. the opportunity to present evidence and testimony on the issue of probable cause during his initial appearance before the District Court?

## BACKGROUND

¶4     E.T. was diagnosed with bi-polar disorder.  Recently, his friends noticed strange changes in his behavior- E.T. began wearing a pistol holster, and making threats against an unidentified person.  His friends were concerned that he posed a danger to himself or others, so they called the sheriff's office.  The sheriff's officers brought E.T. to the ER for immediate evaluation.

¶5     E.T. cooperated fully with the evaluation.  The mental health professional ("MHP") determined that E.T. needed to be detained.  The County Attorney filed a petition for his involuntary commitment and requested that E.T. be detained pending the hearing.  After reviewing the petition, the District Court determined that probable cause existed to support the commitment, and scheduled E.T.'s initial appearance.  The court also found probable cause to detain E.T. pending the § 53-21-126, MCA hearing on the merits of the petition (the "53-21-126, MCA hearing").

¶6 At the initial appearance, E.T. objected to the court's finding of probable cause, and requested a probable cause hearing. The court noted E.T.'s objection, but refused to hold a hearing on the issue of probable cause. The court explained that it did not believe any statutory provision existed which gave E.T. the right to a hearing on probable cause. However, the court stated that E.T. would be able to present evidence and testimony at the § 53-21-126, MCA hearing, which was scheduled to occur four days later. E.T. was held at Pathways Treatment Center for the next four days, pending the upcoming hearing. Before the § 53-21-126, MCA hearing occurred, the County dismissed its petition for E.T.'s involuntary commitment.

## STANDARD OF REVIEW

¶7 Whether a person has been denied due process of law presents a constitutional question of law; our review of such questions is plenary. *In re Mental Health of K.G.F.*, 2001 MT 140, ¶ 17, 306 Mont. 1, ¶ 17, 29 P.3d 485, ¶ 17.

## DISCUSSION

**Did the District Court err by denying E.T. the opportunity to present evidence and testimony on the issue of probable cause during his initial appearance before the District Court?**

¶8 E.T. argues that the existing statutory scheme provides a right to present evidence and testimony at an initial appearance before the District Court, in order to challenge the District Court's finding of probable cause. He reaches this conclusion by reading § 53-21-122(2), MCA, *in pari materia* with § 53-21-115(2), MCA:

[R]eading § 53-21-122(2) with § 53-21-115(2) demands . . . that a respondent in an involuntary commitment be given the right to present evidence and witnesses at any proceeding, including his initial appearance: the plain language of § 53-21-122(2) identifies the initial appearance as the appropriate time for a respondent to object to probable cause, while the plain language of § 53-21-115(2) guarantees a respondent the right to present evidence and witnesses in any proceeding.

App. Br. 7-8 (Mar. 27, 2007).

¶9    In response, the State argues that the plain language of § 53-21-122(2), MCA, allows E.T. to object to the finding of probable cause, but does not give him the right to present evidence at the initial appearance. The State maintains that § 53-21-115(2), MCA, which permits persons to present evidence and witnesses at "any hearing," does not mean they have the right to present such evidence at "every" hearing. The State further argues that the purpose of § 53-21-122(2), MCA, is to give E.T. notice of his constitutional rights, not to allow him to adduce evidence. Finally, even if E.T. were allowed to present evidence at the initial hearing, M. R. Evid. 401 (the rule requiring evidence to be relevant in order to be admissible) would prohibit him from introducing evidence on matters not in issue. Section 53-21-122, MCA, requires the judge to make a determination on probable cause *before* the initial appearance. Thus, the State argues, probable cause is not "in issue" at the initial appearance.

¶10   A.  Does the existing statutory scheme provide persons with the right to challenge probable cause by presenting evidence and testimony at the § 53-21-122(2), MCA initial appearance?

¶11   *1.  Does § 53-21-115, MCA, require that persons be able to present evidence and testimony to challenge probable cause at their § 53-21-122, MCA initial appearance?*

4

¶12 Section 53-21-115(2), MCA, provides persons involuntarily detained or against whom a petition is filed under Title 53, Chapter 21, Part 1 with "the right in any hearing to be present, to offer evidence, and to present witnesses in any proceeding concerning the person." A person's first appearance before the court under this part is governed by § 53-21-122, MCA, and is referred to throughout the part as both an "appearance" and a "hearing." Sections 53-21-122(2), 123, MCA. A mechanical reading of the two statutes *in pari materia* would allow the person to be present, to offer evidence, and to present witnesses at the § 53-21-122(2), MCA initial appearance.

¶13 However, we must construe a statute as a whole to avoid an absurd result. *Infinity Ins. Co. v. Dodson*, 2000 MT 287, ¶ 46, 302 Mont. 209, ¶ 46, 14 P.3d 487, ¶ 46. The interpretation urged by E.T. is inconsistent with other provisions contained within the statutory scheme. For example, the statute explicitly instructs the judge to make the determination regarding probable cause *before* the person ever appears in court: "The judge shall consider the petition. If the judge finds no probable cause, the petition must be dismissed. If the judge finds probable cause . . . the respondent must be brought before the court with the respondent's counsel. . . . The respondent may at this appearance object to the finding of probable cause for filing the petition." Section 53-21-122(2), MCA. A finding of probable cause is a necessary precedent to the person's initial appearance in court.

¶14 In sum, it is unclear from the face of the statute whether the initial appearance is a hearing at which the person may present evidence to challenge the finding of probable cause. The competing statutory interpretations offered by the parties are both plausible.

The question is a close one, and cannot be answered on the face of the statute. The ambiguity in the statute forces us to turn to the part's legislative history. *Infinity Ins. Co.*, ¶ 46 ("If the plain words of a statute are ambiguous, however, the next step in judicial interpretation of the statute is to determine the intent of the legislature.").

¶15 *b. Legislative history of Title 53, Chapter 21, Part 1, MCA*

¶16 Part 1 of Chapter 21, Title 53, MCA, which governs involuntary commitments, is a complicated statutory scheme which has been amended multiple times since its enactment in 1975. We discuss only those amendments relevant to the case at bar.

¶17 The legislative history of § 38-1305, R.C.M. 1947 (1975) (the predecessor to § 53-21-122, MCA) indicates that the Legislature intended courts to make the probable cause determination without a hearing. The first procedural safeguard in the statute, then as today, required the court to determine whether the petition is supported by probable cause. However, as originally enacted, this determination was made by the court "with or without a hearing." Section 38-1305(3), R.C.M. 1947 (1975). In 1977, the Legislature struck this provision and replaced it with the following: "[The judge] shall consider the petition and if he finds no probable cause it shall be dismissed. If the judge finds probable cause, counsel shall immediately be appointed for the respondent and the respondent shall be brought forthwith before the court with his counsel." Section 38-1305(3)(b), R.C.M. 1947 (1977). Under the revised section, the judge makes the probable cause determination *without* a hearing, before the person's initial appearance.

¶18 In 1977, the Legislature added a new provision allowing courts to detain persons in treatment facilities pending the § 53-21-126, MCA hearing, as long as probable cause

6

exists for the detention. Section 38-1305(5), R.C.M. 1947 (1977). Persons detained under this section have the right to request an immediate hearing to challenge the probable cause for the detention. Section 38-1305(5), R.C.M. 1947 (1977) (codified today at § 53-32-124, MCA). This new provision was essential in light of the contemporaneous amendment which deleted the provision providing for probable cause hearings. Absent this provision, a person could be detained for as many as five days without an opportunity to challenge the probable cause for his detention – a result which might violate both the federal and state due process clauses. By creating a right to an immediate detention hearing, the Legislature avoided any due process concerns triggered by eliminating the probable cause hearing at the initial appearance stage.

¶19 In 1997, the Legislature revised § 53-21-122, MCA to prohibit the § 53-21-126, MCA hearing from being held the same day as the person's initial appearance before the court. Several advocacy groups had expressed concern that the existing statutory scheme did not give the person ample time to prepare for the § 53-21-126, MCA hearing. Mont. Sen. Health & Welfare Comm., *An Act Relating to Mental Health: Hearing on H.B. 502*, 55th Leg., Reg. Sess. Ex. 2 (Mar. 14, 1997). A person responding to an involuntary commitment petition, they argued, should be given more time to consult with his counsel and gather witnesses and evidence. Advocates were also concerned that in some cases the person might need more time to obtain appropriate clothing and medication, so he could participate in the proceedings with dignity. In response, the Legislature amended § 53-21-122, MCA, to read, in relevant part:

> The judge shall appoint a professional person and a friend of respondent and set a date and time for the hearing on the petition **that may not be on the same day as the initial appearance** and that may not exceed 5 days, including weekends and holidays, unless the fifth day falls upon a weekend or holiday and unless additional time is requested on behalf of the respondent.

Section 53-21-122(2), MCA (1997) (emphasis added); Mont. Sen. Health & Welfare Comm., *An Act Relating to Mental Health: Hearing on H.B. 502*, 55th Leg., Reg. Sess. Ex. 8 (Mar. 21, 1997).

¶20     This amendment provided an additional procedural safeguard to protect the due process rights of persons under this part.  By prohibiting courts from reaching the merits of the petition on the same day of a person's initial appearance, the Legislature ensured that the person had adequate notice of the petition.  This amendment evinces a clear legislative intent that the initial appearance be held on a separate day from hearings going to the merits of the petition.  If the court were to hold a hearing on the probable cause for the petition, the evidence and testimony presented at that hearing would inevitably go to the merits of the petition itself.  The Legislature explicitly rejected such a result, in order to ensure that persons had the notice that due process demands in such proceedings.  Thus, this suggests that the Legislature did not intend for persons to challenge the probable cause for the commitment until the § 53-21-126, MCA hearing.

¶21     In sum, the legislative history of §§ 53-21-122 and 124, MCA, reveals that the Legislature intentionally amended the statutory scheme to remove the right to a probable cause hearing from the initial appearance stage of the proceedings.  Instead, the Legislature provided persons who were detained by the court for evaluation and treatment

8

pending the § 53-21-126, MCA hearing on the petition with the right to an immediate detention hearing under § 53-21-124, MCA. This revised statutory scheme provides the persons most at risk of deprivation of liberty with the opportunity to challenge the probable cause for their detention. The Legislature also expressed a clear intent that courts should not reach the merits of the petition on the same day that the person appears before the court for the first time.

¶22 Thus, we conclude that the statutory scheme does not provide a person with the right to challenge probable cause by presenting evidence and testimony at his initial appearance before the court. Our conclusion, drawn from the legislative history of the statutes, is also supported by time-honored principles of statutory interpretation. Our role is to interpret the meaning of the terms included in a statute, not to insert what has been omitted. Section 1-2-101, MCA; *Coleman Const., Inc. v. Kudrna*, 2006 MT 98, ¶ 7, 332 Mont. 112, ¶ 7, 136 P.3d 970, ¶ 7; *City of Billings v. Gonzales,* 2006 MT 24, ¶ 13, 331 Mont. 71, ¶ 13, 128 P.3d 1014, ¶ 13. Section 53-21-122, MCA, provides persons with the right to object to the court's finding of probable cause, but does not provide them with the right to a hearing on probable cause at the initial appearance. We refuse to read a requirement for a hearing into the statute where none currently exists, especially where the legislative history suggests no such requirement was intended. This, however, does not render the statutory right to object a mere formality. As the District Court stated, the person has the opportunity to present evidence and testimony to challenge probable cause at the § 53-21-126, MCA hearing. The right to object also allows the person to preserve for appeal the issue of whether sufficient probable cause existed to support the petition.

¶23 B. Does the statutory failure to provide for a hearing on probable cause at the initial appearance stage in involuntary commitment cases constitute a deprivation of due process of law?

¶24 Having concluded that the existing statutory scheme does not afford E.T. the right to challenge the probable cause finding by introducing evidence and testimony at his initial appearance before the court, we must consider whether the existing statutory scheme satisfies the minimum demands of due process.

¶25 Article II, Section 17 of the Montana Constitution provides that "[n]o person shall be deprived of life, liberty or property without due process of law." Due process is "flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S. Ct. 893, 902 (1976) (citation omitted). To determine whether the demands of due process were met in the instant case, we apply the balancing test adopted by the United States Supreme Court in *Mathews v. Eldridge*. *Mathews*, 424 U.S. at 335, 96 S. Ct. at 903; *M.C. v. Dept. of Institutions*, 211 Mont. 105, 109-10, 683 P.2d 956, 958 (1984). The *Mathews* test requires us to balance the interests of the individual against those of the state by considering three distinct factors: 1) the individual's interest affected by the state action, 2) the risk of erroneous deprivation and the probable value of any additional or substitute procedural safeguards, and 3) the government's interest, including the additional fiscal and administrative burdens the additional or substitute safeguard would entail. *Mathews*, 424 U.S. at 335, 96 S. Ct. at 903.

¶26   *1. The individual's interest affected by the state action*

¶27   In many due process challenges to involuntary commitment procedures, the liberty interest at stake is of the most fundamental nature: "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80, 112 S. Ct. 1780, 1785 (1992). In *Matter of Shennum,* we noted the "calamitous effect" a commitment can have, including the "deprivation of a person's liberty for up to three months . . . and . . . inevitable damage to a person's reputation." 210 Mont. 442, 450-51, 684 P.2d 1073, 1078 (1984). However, the case at bar must be distinguished from cases like *Shennum*. In *Shennum*, the person was committed for three months as a result of the State's failure to properly adhere to the statutory procedures governing involuntary commitment. Here, the detention is temporary - five days at most. We distinguish the case at bar from *Shennum* not to diminish E.T.'s liberty interests, but to properly define their scope. Though E.T. faced a shorter detention, the same fundamental liberty of freedom from bodily restraint is implicated in the instant case.

¶28   *2. The risk of erroneous deprivation and probable value of additional safeguards*

¶29   As a result of not being able to present evidence and testimony to challenge the court's finding of probable cause at the initial appearance, E.T. faces the risk of being erroneously detained for up to five days pending the § 53-21-126, MCA hearing, as well as the risk of submitting to an unnecessary court-ordered examination. We now consider the magnitude of that risk, and the value that a probable cause hearing at the initial appearance stage would have as an additional safeguard.

¶30 The modern statutory scheme governing involuntary commitment proceedings contains multiple procedural safeguards to protect the constitutional rights of persons under this part. First, as discussed above in more detail, the statute requires the judge to review the petition for probable cause before the person is haled into court. Section 53-22-122(2), MCA. Petitions which have no merit will be dismissed outright at this procedural checkpoint. Next, at the initial appearance, the person is advised of his constitutional rights, and an attorney and a "friend of respondent" are appointed to protect the person's interests. Section 53-22-122(2), MCA.

¶31 The § 53-21-126, MCA hearing on the petition must be held within five days of this initial appearance- another safeguard which ensures that the person may not be detained indefinitely. Section 53-22-122(2), MCA. In fact, the statutory scheme places strict limits on the State's ability to detain the person: the person may not automatically be detained pending the hearing. Rather, the court must specifically find that probable cause exists to detain the person, and must orally notify the person's counsel immediately. Section 53-21-124, MCA. At that point, the person has the right to request a detention hearing, which must be held immediately. Section 53-21-124(1), MCA.

¶32 The addition of a probable cause hearing at the initial appearance stage would serve as a check on the judicial determination made prior to the initial appearance. However, this check offers little value as an additional procedural safeguard. In the event that the person is not detained pending the hearing, he suffers no substantial detriment by waiting until the § 53-21-126, MCA hearing to present his evidence and testimony. In the event the person is detained, § 53-21-124, MCA, already provides him with the right

12

to an immediate detention hearing, where he may challenge the probable cause for his detention by presenting evidence and testimony. Thus, a hearing on probable cause at the initial appearance stage would have either no effect on the person's rights, or would simply duplicate another procedural safeguard already provided by the Legislature.

¶33    *3. The State's interest*

¶34    The State sets forth the purposes behind Title 53, Chapter 21, Part 1 at § 53-21-101, MCA:

> (1) [To] secure for each person who may be suffering from a mental disorder and requiring commitment the care and treatment suited to the needs of the person and to ensure that the care and treatment are skillfully and humanely administered with full respect for the person's dignity and personal integrity;
>
> (2) [To] accomplish this goal whenever possible in a community-based setting;
>
> (3) [To] accomplish this goal in an institutional setting only when less restrictive alternatives are unavailable or inadequate and only when a person is suffering from a mental disorder and requires commitment; and
>
> (4) [To] ensure that due process of law is accorded any person coming under the provisions of this part.

As discussed in greater detail above, the Legislature has specifically designed the present statutory scheme to ensure that due process of law is accorded to persons by providing them with ample notice of involuntary commitment proceedings. If we were to read a requirement for a probable cause hearing into § 53-21-122, MCA, this would conflict with the Legislature's express purpose in separating the initial appearance from the hearing on the merits of the petition.

¶35    In addition to the goals set forth above, the State has a very strong interest in preventing a person suffering from a mental disorder from harming himself or herself, or

13

the surrounding community. The Legislature empowered the courts to do this by allowing persons to be detained for up to five days pending the § 53-21-126, MCA hearing. Thus, where the court finds that probable cause exists, the person may be immediately detained and treated to prevent harm to himself or others.

¶36   Finally, requiring a probable cause hearing in all involuntary commitment cases would consume additional judicial resources. The existing statutory system promotes judicial economy by providing probable cause hearings to those who face the greatest risk of deprivation: the persons who are detained pending the § 53-21-126, MCA hearing. As discussed above, persons who are not detained suffer little harm by waiting five days to address the merits of the petition at the § 53-21-126, MCA hearing. Thus, this additional hearing offers little value to justify the additional burden it would place on the courts.

¶37   In sum, the State's interest in protecting persons involved in involuntary commitment proceedings and the surrounding community far outweighs the inconvenience of a temporary detention measuring five days or less. The existing statutory scheme minimizes the risk of erroneous deprivation of rights by providing numerous due process safeguards, including the right to an immediate hearing to challenge the probable cause for the person's detention. A hearing on probable cause at the initial appearance stage would afford little additional procedural protection.

¶38   Thus, we conclude that E.T. suffered no due process violation in the instant case. Once the court issued its order finding that there was probable cause to detain him pending the full hearing, E.T.'s counsel could have immediately requested a § 53-21-

14

124(1), MCA detention hearing. At this hearing, E.T. could have presented evidence and testimony to challenge the probable cause for his detention. Inexplicably, E.T.'s counsel did not request the hearing provided for under the statute, but instead sought to introduce evidence at the initial appearance itself.

## CONCLUSION

¶39 In conclusion, we hold that the District Court did not err in refusing to hold a hearing on the probable cause for E.T.'s involuntary commitment. The existing statutory scheme does not provide a right to a hearing on probable cause at the initial appearance stage. Furthermore, due process does not require one. The existing procedural safeguards-especially the right to an immediate detention hearing-would have afforded E.T. adequate opportunity to challenge the probable cause for his detention, had he chosen to take advantage of them. We affirm.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ JIM RICE
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS

15