DA 07-0281

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 193

STATE OF MONTANA, ACTING BY
AND THROUGH THE MONTANA
DEPARTMENT OF TRANSPORTATION,

       Plaintiff and Appellant,

   v.

SKYLINE BROADCASTERS, INC., a Montana
Corporation, JOHN P. STOKES; Z-600, INC., a
Montana Corporation; QUESTA RESOURCES, INC.,
a Montana Corporation, WILLIAM E. MYTTY;
SANDRA F. MYTTY; QUALITY SUPPLY, INC.,
PROFIT SHARING PLAN AND TRUST; DOUGLAS
S. HADNOT; J. CHRISS CRAWFORD; MYRNA K.
CRAWFORD; STEPHEN S. ELLIS, M.D., P.C.,
EMPLOYEES AMENDED AND RESTATED PENSION
PLAN; and THOMAS H. BOONE, TRUSTEE OF THE
BOONE KARLBERG EMPLOYEES PROFIT SHARING TRUST,

       Defendants, Appellees and Cross-Appellants.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                    In and For the County of Flathead, Cause No. DV-2001-032B
                    Honorable Katherine R. Curtis, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              James A. Lewis, Robert Gentry, Timothy W. Reardon, Montana
              Department of Transportation, Helena, Montana

       For Appellees:

              Christy L. Brandon, Brandon Law Firm, PLLC, Bigfork, Montana

              John Stokes (Self-Represented), Kalispell, Montana

Submitted on Briefs:  April 24, 2008

Decided:  June 5, 2009

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 The Montana Department of Transportation (MDT), appeals from a judgment entered by the Eleventh Judicial District Court, Flathead County, in favor of MDT after the court determined the amount of attorney fees and costs to be awarded to the defendants in this condemnation action. Defendants Questa Resources, Inc.; William E. Mytty and Sandra F. Mytty; Quality Supply Inc. Profit Sharing Plan and Trust; Douglas S. Hadnot; J. Chriss Crawford and Myrna K. Crawford; Stephen S. Ellis, M.D., P.C., Employees Amended and Restated Pension Plan; and Thomas H. Boone, Trustee of the Boone, Karlberg Employees Profit Sharing Trust (collectively, the lender defendants) cross-appeal on two issues relating to liability for and the amount of the judgment. We affirm in part and reverse and remand in part.

¶2 The issues are:

¶3 1. Did the District Court err in setting the hourly rate of attorney fees to be awarded to defense counsel Wade Dahood?

¶4 2. Did the District Court err in concluding the proper treatment of the May 2004 stipulation was to set off $30,000 from the attorney fee award?

¶5 3. Did the District Court err in ruling the lender defendants were jointly and severally liable for the overage judgment?

¶6 4. Did the District Court err in its calculation of the final judgment amount?

## BACKGROUND

¶7 MDT brought this action in 2001 to condemn the defendants' property south of Kalispell, Montana, for a highway project. Early on in the litigation, the defendants

3

stipulated to the necessity for the taking and possession of a part of the property, and MDT amended its complaint to reduce the size of the taking. In connection with that stipulation and amendment, MDT agreed, in May of 2004, to pay the defendants $30,000 as a compromise amount for their "claim for necessary expenses of litigation."

¶8 The condemnation action eventually was resolved on November 5, 2005, again by agreement of the parties. MDT agreed to pay $400,000 for the property, along with the defendants' necessary expenses of litigation as defined under § 70-30-306, MCA. Counsel for defendants Questa and Mytty moved for payment of their attorney fees and other expenses of litigation in the amount of $3,665, which motion MDT did not oppose. However, MDT moved to retax defense attorney Wade Dahood's claim for fees and costs in the amount of $667,891.

¶9 The District Court held a hearing in June of 2006 to determine the amount of the defendants' necessary expenses of litigation. Dahood testified and submitted documentation in support of his claim, which he had re-totaled at $681,907.75, including paralegal fees, expenses, and 1,906 hours of work at an hourly rate of $250 for his own services. Dahood supported this hourly rate with affidavits of eight other Montana attorneys, who averred that the rate was appropriate for an attorney of his stature in a complicated condemnation case. MDT, on the other hand, presented testimony that the customary hourly rate for attorneys in Flathead County was $150. MDT also challenged the total number of hours Dahood claimed, on several grounds. In its written judgment filed November 14, 2006, the District Court reduced the number of hours for which it allowed Dahood payment from the 1,906 hours he claimed to 1,205 hours. The court

4

adopted the $250 hourly rate for Dahood's services, and awarded the defendants $301,250 for attorney fees, plus expert fees totaling $45,650 and costs of $4,488.23.

¶10    The District Court then determined the $750,500 deposit MDT had made with the court pending this action, pursuant to §§ 70-30-308 and -311(5)(b), MCA, plus statutory interest on that amount, was more than the total judgment against MDT. Dahood had withdrawn all of the deposit in 2001 through 2003, using it to, among other things, pay off the lender defendants' mortgages in the amount of $293,930. The District Court ruled the defendants are jointly and severally liable to repay MDT for that overage, plus interest. As a result, on February 26, 2007, the court entered an order granting MDT a net judgment of $98,960.69 plus interest at the rate of 10 percent. MDT appeals, and the lender defendants cross-appeal.

¶11    After this appeal had been briefed and submitted to the Court, defendant John Stokes filed for bankruptcy in the United States Bankruptcy Court for the District of Montana. By order dated April 17, 2009, the Bankruptcy Court lifted the automatic bankruptcy stay imposed pursuant to 11 U.S.C. § 362, to allow this appeal to go forward. The stay remains in effect as to any efforts to enforce judgment against Stokes.

## STANDARDS OF REVIEW

¶12    We review a district court's interpretation and application of a statute for correctness. *State, ex rel. Montana Dept. of Transp. v. American Bank of Montana*, 2008 MT 362, ¶ 7, 346 Mont. 405, 195 P.3d 844. The same standard applies to our review of the construction and interpretation of written agreements and determinations as to whether ambiguity exists in a contract; we review rulings on these matters to determine

5

whether the district court's conclusions of law are correct. *See In re Marriage of Holloway*, 2000 MT 104, ¶ 5, 299 Mont. 291, 999 P.2d 980.

## ISSUE 1

¶13 *Did the District Court err in setting the hourly rate of attorney fees to be awarded to defense counsel Wade Dahood?*

¶14 Section 70-30-306, MCA, defines necessary expenses of litigation for purposes of condemnation actions, including "reasonable and necessary attorney fees, expert witness fees, exhibit costs, and court costs." The statute provides that "[r]easonable and necessary attorney fees are the customary hourly rates for an attorney's services in the county in which the trial is held." Section 70-30-306(2), MCA.

¶15 After briefing was completed in this case, we construed the language of § 70-30-306, MCA, in *American Bank*. We held that reasonable and necessary attorney fees awarded under § 70-30-306, MCA, must be computed based on hourly rates typical or common for a non-specific attorney's services in the county in which trial is held; they are not to be computed pursuant to the "*Forrester* factors" which are applied when computing attorney fees in other types of cases. *American Bank*, ¶¶ 9, 14.

¶16 As a result of timing, the District Court lacked the benefit of our decision in *American Bank*. In its findings on this matter, the court began by stating it would set the attorney fees at "the customary hourly rate in Flathead County," but it then went on to incorporate the *Forrester* factors into its analysis. Based on Dahood's testimony and the affidavits he presented—which addressed the *Forrester* factors—the court set Dahood's hourly rate for this action at $250 per hour. However, as we determined in *American*

6

*Bank*, the *Forrester* factors do not apply in a condemnation action. For that reason, that portion of the judgment of the District Court must be, and is, vacated.

¶17 At the District Court's hearing on attorney fees, MDT introduced testimony by two attorneys who have practiced law in Flathead County, Richard DeJana and Marshall Murray. Both testified the usual and customary fee for an attorney's services in Flathead County in the year 2005 was $150 per hour; DeJana also filed an affidavit to that effect. That is the evidence upon which the District Court should have relied in setting Dahood's hourly rate. On remand, the District Court is instructed to recalculate the attorney fees to which the defendants are entitled, based on an hourly rate of $150 for Dahood.

**ISSUE 2**

¶18 *Did the District Court err in concluding the proper treatment of the May 2004 stipulation was to set off $30,000 from the attorney fee award?*

¶19 MDT argues it should have been granted more than a $30,000 credit against the total attorney fees and costs as a result of the settlement by stipulation between the parties in May of 2004. MDT contends the settlement was intended to encompass all litigation expenses incurred up to the time the amended complaint was filed. MDT points out Dahood had submitted a bill indicating he performed 462 hours of work at $250 per hour up to the time of the stipulation, plus paralegal fees and expenses. As a result, MDT contends it should have received a credit for a total of $176,785.57 in pre-settlement legal fees, paralegal fees, and expenses, instead of just $30,000.

¶20 The May 2004 stipulation provided that "the 'lump sum' amount of $30,000" was

> for a complete and total settlement of that certain claim for necessary
> expenses of litigation as defined in § 70-30-306, MCA, and incurred as a

7

result of the reduction in the area of the taking and attached to Mr. Dahood's letter of April 6, 2004. The taking was reduced by the Judge's Order Amending the Complaint dated December 18, 2001. This agreement represents the settlement of a doubtful and disputed claim and neither party is agreeing to validity or correctness of any particular item included within that claim.

We agree with the District Court's implied conclusion that this document is ambiguous. Among other things, the stipulation makes no reference to either the number of hours or the amount of claimed attorney fees settled by the $30,000 payment. When ambiguity exists in a contract, the court may turn to extrinsic evidence to determine the intent of the parties. *Ophus v. Fritz*, 2000 MT 251, ¶ 29, 301 Mont. 447, 11 P.3d 1192.

¶21 The District Court received additional evidence, including testimony by Dahood and copies of letters between the parties, which supports the defendants' position that the settlement was only for fees relating solely to the original complaint, not for all fees up to the date of the stipulation. Dahood testified the parties intended the $30,000 as payment for 120 hours of his work relating to the initial complaint which had no relevance to the amended complaint, at $250 per hour. Based on that evidence, the District Court concluded the intent of the stipulation was to settle the claim for the defendants' attorney and paralegal fees relating solely to the original complaint, so that the proper treatment of the $30,000 payment was to deduct that amount from the total attorney fees awarded to Dahood.

¶22 The District Court having accepted the defendants' evidence on the intent of the stipulation, the court's conclusion of law is correct. We hold the District Court did not err in its treatment of the May 2004 stipulation.

**ISSUE 3**

¶23　*Did the District Court err in ruling the secured lenders were jointly and severally liable for the overage judgment?*

¶24　On cross-appeal, the lender defendants—all of whom are secured creditors with a mortgage on the condemned property and a perfected UCC lien upon the condemnation proceeds—contend they are not liable for excess proceeds withdrawn from MDT's $750,500 deposit with the District Court. The lender defendants admit they received $293,930 through Dahood as payment on the mortgage debt on the property, but they point out they did not participate in establishing the value of the land taken, condemnation damages, or settling the case; they appear only as secured creditors with a mortgage on the condemned property and a perfected UCC lien upon the condemnation proceeds.

¶25　The District Court stated it would not enter judgment in favor of the lender defendants because they had not filed any claim for relief against any other party to this action. The court further found Dahood's withdrawals from the money deposited with the court were done in his role as counsel for all defendants.

¶26　Section 70-30-311(5), MCA, provides "the condemnee who has received all or any part of the amount deposited is liable to the condemnor for any excess of the amount received over the amount finally assessed[.]" We previously have determined under § 70-30-311(5), MCA, that, in a condemnation case, where more money has been withdrawn from the deposit made with the district court than ultimately is awarded to the landowner, a district court may issue an overage judgment ordering the landowner to

9

repay the excess withdrawn, with interest, without requiring a separate legal action to be brought. *See State, by and through Dept. of Hwys. v. Helehan*, 186 Mont. 286, 607 P.2d 537 (1980). We have not, however, addressed the issue presented here: whether secured lenders are jointly and severally liable for any overage.

¶27 In *Grand River Dam Auth. v. Jarvis*, 124 F.2d 914 (10th Cir. 1942), the Tenth Circuit Court of Appeals considered a similar question under a similar statute. *Grand River* was a proceeding by the Grand River Dam Authority, a public corporation, to condemn a tract of land owned by one A. M. Jarvis. The Authority deposited in court $5,895, the appraised value of the property. At Jarvis's request, that money was disbursed to him, two mortgagees, and the county treasurer for payment of taxes. The Authority then demanded a jury trial, which resulted in a verdict of $5,000. Thereafter, the Authority filed a motion for, among other relief, judgment against Jarvis and the mortgagees for $895, together with interest on that amount. The trial court refused to enter judgment against the two mortgagees for a return of the $895 overpayment. On appeal, the Tenth Circuit Court held the mortgagees were not required to repay any part of what they received, reasoning they were entitled to receive all the proceeds until their mortgage debt was paid and discharged. The court held the excess went to Jarvis and not to the mortgagees, and Jarvis alone was required to repay. *Grand River*, 124 F.2d at 917-18.

¶28 Similarly, in *State v. Teuscher*, 761 P.2d 49 (Wash. 1988), the issue was the extent to which lien creditors must repay the state for the difference between the amount which the state had tendered for property while condemnation proceedings were pending—some

10

of which had been withdrawn by the lien creditors—and the fair market value of the condemned property as later determined by a jury. The Washington Supreme Court held the lien creditors were liable to repay only those amounts, if any, which they had withdrawn from the deposit in excess of their actual interest in the property. *Teuscher*, 761 P.2d at 493-94. The court remanded for the trial court's determination of the amount of each creditor's interest in the property.

¶29 As MDT points out, *Grand River* and *Teuscher* were not decided under § 70-30-311(5), MCA. However, we conclude the language of § 70-30-311(5), MCA, compels the same result as was obtained in those cases. Section 70-30-311(5), MCA, provides for recovery "for any excess of the amount received over the amount finally assessed," thus limiting liability on an overage judgment to the amount of excess actually received by a condemnee. The interpretation given the statute by the District Court leads to an absurd result: if any condemnee receives proceeds from a condemnation case, that condemnee will be jointly and severally liable for payment of an overage judgment, regardless of the amount that condemnee actually received. Here, there was no showing that the lender defendants received any excess over the amount of their mortgages. Had MDT deposited with the District Court only the $400,000 later agreed upon as the value of the property taken, the lender defendants still would have been entitled to the same amount they received. If the property was overvalued or if Dahood withdrew from the deposit more money than the land was worth, then the responsibility for repaying MDT must fall on the landowners, not on the secured creditors.

¶30 MDT argues that another reason the lenders should be held jointly and severally liable is that the lenders' attorney fees for Dahood's services were paid through the withdrawals Dahood made from the money MDT deposited with the court. It is true that, at times, Dahood represented to the District Court that he appeared on behalf of all of the defendants. However, we note his motion for an award of attorney fees states he represented John Stokes, Skyline Broadcasters, Inc., and Z-600, Inc. In addition, the lender defendants state they had no written fee agreement with Dahood. We conclude the lender defendants do not bear responsibility for Dahood's fees and costs.

¶31 We hold the District Court erred in ruling that the lender defendants are jointly and severally liable for the overage judgment.

### ISSUE 4

¶32 *Did the District Court err in its calculation of the final judgment amount?*

¶33 The lender defendants correctly point out that, in computing the judgment, the District Court did not use the dates established by the settlement, awards, and findings and, as a result, it incorrectly calculated the total judgment amount, thereby depriving the defendants of just compensation. On remand, the District Court is instructed to recalculate the total amount due using an updated version of Exhibit B to the lender defendants' "calculation of judgment re order and rationale dated 1/12/2007," which document appears in the District Court record as document number 309 and was filed with the District Court on January 29, 2007.

¶34 Reversed and remanded for further proceedings consistent with this Opinion, after the lifting of the bankruptcy stay which is now in effect as to John Stokes.

12

/S/ JAMES C. NELSON

We Concur:

/S/ BRIAN MORRIS
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ JIM RICE