JUSTICE WHEAT
dissents.
¶46 I concur with the Court’s disposition of Issues 2 and 3.1 dissent from the Court’s resolution of Issue 1.
¶47 At the outset, I agree with the Court that it is well established that in construing and analyzing the terms of an insurance policy, we first look to the plain language of the policy. See Stutzman v. Safeco Ins. Co. of Am., 284 Mont. 372, 376, 945 P.2d 32, 34 (1997). We “may not rewrite the contract at issue, but must enforce it as written if its language is clear and explicit.” Id.
¶48 Before looking specifically at the language of the policy, there are several points to be made: (1) under Part C (UNINSURED/UNDERINSURED MOTORISTS COVERAGE), the Monroes’ policy provides for UIM coverage from either the owner or operator of an underinsured vehicle; and, (2) UIM coverage is available after liability coverage is exhausted under any applicable liability policy. In my view, the plain and unambiguous language of the Monroes’ policy provides that Laura’s vehicle is “underinsured” for the purpose of providing UIM coverage.
¶49 Under Part A of both Laura’s and the Monroes’ policies, Safeco’s obligation to provide liability coverage is described as follows:
We will pay damages for bodily injury ... for which any insured becomes legally responsible because of an auto accident.
Laura is a named insured under her own policy, and under the Monroes’ policy, she is a “person using [the Monroes’] covered auto.” Laura is an “owner” under her own policy, and she is an “operator” and permissive user under the Monroes’ policy. Safeco was obligated to pay liability coverage-and in fact did pay liability coverage-because under both policies, Laura was legally responsible for the Monroes’ injuries.
¶50 Under Part C of the Monroes’ policy, Safeco’s obligation to provide UIM coverage arises from the Monroes’ legal right to recover damages that exceed the liability coverage from either an owner or operator of an underinsured vehicle. By removing all language related to operator and leaving only language related to owner, the pertinent parts of Part C read as follows:
A. We [Safeco] will pay damages which an insured [the Monroes] is legally entitled to recover from the owner [Laura] ... of an ... underinsured motor vehicle because of bodily injury:
1. Sustained by an insured; and
2. Caused by an accident.
The owner’s [Laura’s] ... liability [legal responsibility to pay damages] for these damages must arise out of the ownership ... of *433 the ... underinsured motor vehicle.
We will pay under Underinsured Motorists Coverage only if...:
1. The limits of liability under any applicable bodily injury liability ... policies have been exhausted by payment of ... settlements ....
(Emphasis added.) To me, this language is clear and unambiguous. Laura is the owner of a motor vehicle covered by an applicable liability policy, the limits of which were paid to the Monroes because of Laura’s legal responsibility for the Monroes’ injuries in an auto accident. Under the plain language of the Monroes’ policy, Safeco is obligated to provide UIM coverage because Laura is the owner of an underinsured vehicle as defined under the policy.
¶51 The Court correctly concludes that under the plain language of the Monroes’ policy, their vehicles are excluded as “underinsured vehicles.” Opinion, ¶ 17. However, Laura’s vehicle is not excluded as an “underinsured vehicle.” Again, removing all language related to operator and leaving language related to owner, Part C of the Monroes’ policy defines an underinsured vehicle as follows:
C. “Underinsured motor vehicle” means a land motor vehicle ...to which a bodily liability ... policy [Laura’s] applies at the time of the accident but the amount paid for bodily injury under that... policy to an insured [the Monroes] is not enough to pay the full amount the insured [the Monroes] is legally entitled to recover as damages.
However, “underinsured motor vehicle” does not include any vehicle ...:
1. Owned by ... you [the Monroes]....
(Emphasis added.) Again, the language is clear and unambiguous. Laura is the owner of a vehicle covered by a liability policy under which policy limits were paid to the Monroes. Thus, her vehicle qualifies as an underinsured vehicle under the policy definition. The only vehicles excluded under the policy definition are those owned by the Monroes. Laura’s vehicle is not excluded.
¶52 Because the plain, clear, and unambiguous language of the Monroes’ policy is broad enough to incorporate Laura’s vehicle under its definition of underinsured motor vehicle, the Monroes are entitled to make a claim for UIM coverage under their policy. This claim would not violate any of the principles of public policy established in Stutzman-i.e., “double-dipping” from the same policy and converting cheap UIM coverage to expensive liability coverage when the insured controls the amount of liability coverage. Stutzman, 284 Mont. at 382, *434 945 P.2d at 36. The Monroes had no control over the amount of liability coverage that Laura had obtained for her vehicle.
¶53 To me, the Monroes’ policy clearly provides that Safeco should pay UIM benefits for any damages in excess of the liability coverage from both the Monroes’ and Laura’s policy. However, other members of this Court, as well as some of the parties, interpret this language differently. Although I disagree with their interpretation, it is another interpretation and as we have held, when the language of the contract is subject to two interpretations, it is ambiguous. GiacomeLLi v. Scottsdale Ins. Co., 2009 MT 418, ¶ 32, 354 Mont. 15, 221 P.3d 666. Furthermore, when the language of an insurance contract is ambiguous, courts construe the ambiguous provisions against the insurer and in favor of extending coverage. GiacomeLLi, ¶ 31. Applying these well-established principles of interpretation of ambiguous insurance contracts, we should conclude that Part C of the Monroes’ policy is ambiguous as to whether Laura’s vehicle qualifies as underinsured.
¶54 By way of illustration, I note that the Court points to the policy language that provides, “[t]he owner’s or operator’s liability ... must arise out of the ownership, maintenance or use of the ... underinsured motor vehicle,” for the proposition that Laura’s liability arose from her use of the Monroes’ vehicle “independent of her ownership of two uninvolved vehicles.” Opinion, ¶ 23. On the other hand, when the above language is read in conjunction with the language defining an underinsured motor vehicle as one “to which a bodily injury liability... policy applies at the time of the accident,” I maintain that an equally plausible interpretation is that Laura’s vehicles qualify as UIM vehicles. Nowhere in the policy does it state that the underinsured vehicle has to be “involved in the accident,” as asserted by the Court. Opinion, ¶ 24. At the very least, the definition of an underinsured motor vehicle is ambiguous and can be read to mean either the Monroes’ vehicle or Laura’s vehicles. Because this language is ambiguous, we should construe it in favor of the Monroes. GiacomeLLi, ¶ 31.
¶55 Additionally, the Court states that “the $200,000 payment the Monroes received from Laura’s policy came from Laura’s ‘Liability Coverage’ not from her UIM coverage” means that this payment “was based solely on Laura’s status as a tortfeasor” and had nothing to do with her ownership of vehicles not involved in the accident. Opinion, ¶ 25.1 do not dispute Laura’s status as a tortfeasor. I do dispute that the policy restricts the tortfeasor to a particular vehicle. The policy language refers instead to “any applicable bodily injury ... policies ... *435 [that] have been exhausted by payment of... settlements” and says nothing about a particular vehicle. Because Laura’s vehicles provided liability coverage that was exhausted by payment of settlements to the Monroes, her vehicles qualify as underinsured, thus allowing UIM coverage available to the Monroes under their policies.
¶56 At the very least, the contrast between my interpretation and the Court’s interpretation of this policy provision demonstrates that reasonable minds can differ in their reading of this language. This language is subject to two competing interpretations and therefore is ambiguous. Giacometti, ¶ 32. I maintain, again, that we should construe this ambiguity in favor of the Monroes.
¶57 I would therefore reverse the District Court’s grant of summary judgment in favor of Safeco and remand the case for further proceedings. I dissent from our failure to do so.
DISTRICT COURT JUDGE IRIGOIN, sitting for JUSTICE NELSON, joins in the foregoing dissent.