

DA 11-0248

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2011 MT 266

ESTATE OF TERRY L. RICHERSON,
by and through its personal representative,
DEBORAH RICHERSON,

        Plaintiff and Appellant,

   v.

THE CINCINNATI INSURANCE COMPANY,

        Defendant and Appellee.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDV 10-476
Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

            Michael G. Barer; Barer Law Offices; Great Falls, Montana

            Benjamin R. Graybill; Graybill Law Firm; Great Falls, Montana

       For Appellee:

            Guy W. Rogers, Jon A. Wilson; Brown Law Firm; Billings, Montana

                     Submitted on Briefs:  August 31, 2011

                            Decided:  October 27, 2011

Filed:

_____
                      Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     This case arises from a dispute over the interpretation of an insurance contract. The Estate of Terry L. Richerson (Estate) through its personal representative, Deborah Richerson, appeals from the order of the Eighth Judicial District Court, Cascade County, granting summary judgment to The Cincinnati Insurance Company (Cincinnati).  We affirm.  We address the following issue:

¶2     *Did the District Court err by granting summary judgment in favor of Cincinnati?*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3     The dispute concerns the Estate's entitlement to medical payments under a motor vehicle policy issued by Cincinnati for the subject vehicle.  We discuss the tragic facts in order to provide the foundation for the parties' arguments.

¶4     Terry L. Richerson (Mr. Richerson) was the owner and foreman of a concrete finishing company.  His company was one of two concrete finishing subcontractors working on a project for the Benefis Hospital in Great Falls.  On November 2, 2005, Mr. Richerson crossed the street from the area in which his company was performing concrete work to use an outhouse.  After exiting the outhouse, Mr. Richerson was seriously injured when a concrete truck, owned by United Materials and employed by the other concrete subcontractor, backed over him.  Mr. Richerson was caught in the truck's differential or driveshaft, and although the exact distance is disputed, he was transported at least five feet and possibly up to fifty feet by the truck.  Mr. Richerson had no physical

2

contact with or other connection to the truck prior to the accident. He later died from his injuries.

¶5 The Estate requested medical payments under the policy Cincinnati issued to United Materials for the truck involved in the accident. Cincinnati denied the claim. The pertinent language of the medical payments coverage section of the Cincinnati policy is as follows:

**A. Coverage**

We will pay reasonable expenses incurred for necessary medical and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident". . . .

**B. Who is an Insured**
. . .
3. Anyone for injuries while "occupying" a covered "auto".
. . .
**F. Additional Definitions**
. . .
2. "Occupying" means in, upon, getting in, on, out or off.

¶6 The policy thus provides coverage for injuries suffered by a claimant while "occupying" a covered auto, and "occupying" is further defined as "in, upon, getting in, on, out or off." The Estate argued to the District Court that because Mr. Richerson was caught in and transported by the concrete truck, he was "upon" it, and therefore he was "occupying" the truck, qualifying him as an insured under the policy. Cincinnati countered that Mr. Richerson was not "upon" the vehicle, did not meet the definition of "insured," and was not entitled to coverage. Both parties filed for summary judgment, agreeing that no issues of material fact were in dispute. Applying the "reasonable

3

connection" test from our case precedent, the District Court concluded that Mr. Richerson was not occupying the covered auto as defined in the policy and, accordingly, granted summary judgment in favor of Cincinnati.[1]

## STANDARD OF REVIEW

¶7    We will review a district court's grant or denial of summary judgment de novo, applying the same criteria as the district courts. *Modroo v. Nationwide Mut. Fire Ins. Co.*, 2008 MT 275, ¶ 19, 345 Mont. 262, 191 P.3d 389 (citing *Wendell v. State Farm Mut. Auto. Ins. Co.*, 1999 MT 17, ¶ 9, 293 Mont. 140, 974 P.2d 623). We review the District Court's interpretation of a contract for correctness. *Giacomelli v. Scottsdale Ins. Co.*, 2009 MT 418, ¶ 14, 354 Mont. 15, 221 P.3d 666.

## DISCUSSION

¶8    *Did the District Court err by granting summary judgment in favor of Cincinnati?*

¶9    Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file," along with any affidavits demonstrate that no genuine issue exists as to any material fact and that the party moving for summary judgment is entitled to judgment as a matter of law. Rule 56(c), M. R. Civ. P. "The interpretation of an insurance policy presents a question of law." *Wendell*, ¶ 10. Here,

---

[1] As part of its analysis, the District Court first applied the "physical contact" test and concluded that because Mr. Richerson was not in physical contact with the vehicle immediately prior to the accident, he was not occupying the vehicle. However, we explained in *Sayers v. Safeco Ins. Co.*, 192 Mont. 336, 628 P.2d 659 (1981), that the physical contact test "is not determinative under Montana law" and essentially rejected it as the proper test. *Sayers*, 192 Mont. at 338. Indeed, the claimant in *Sayers* was "at least ten feet" from the vehicle at the time of the accident, yet we concluded he was covered by the policy. *Sayers*, 192 Mont. at 338-39. As indicated by the discussion herein, a claimant's physical contact with the insured vehicle is factually relevant to the "reasonable connection" test, but it is not a stand-alone test.

both parties take the position that no issues of material fact exist. Thus, whether summary judgment is appropriate turns on the correctness of the District Court's legal conclusions in interpreting the contract.

¶10 We have employed the "reasonable connection" test to determine whether an injured person is an occupant of a vehicle for purposes of obtaining coverage under the vehicle's insurance. *Nelson v. Iowa Mut. Ins. Co.*, 163 Mont. 82, 515 P.2d 362 (1973); *Sayers*, 192 Mont. 336, 628 P.2d 659. Under this test, we look to whether the claimant's activities at the time of the accident "were so reasonably connected" to the insured auto that, under the law, the claimant could be said to be an occupant within the policy's meaning. *Sayers*, 192 Mont. at 339, 628 P.2d at 661 (citing *Nelson*, 163 Mont. 82, 515 P.2d 362); *see Nelson*, 163 Mont. at 86, 515 P.2d at 364 (determining whether "[s]uch activity was reasonably carried out and was reasonably connected with the operation of the vehicle."). Pursuant thereto, Cincinnati argues that because Mr. Richerson was neither in contact with the truck nor engaged in any activity with the truck prior to the accident, he was not reasonably connected to the vehicle. In other words, Mr. Richerson was not associated with the truck for any purpose except for the accident itself.

¶11 The Estate argues that because Mr. Richerson was caught in and transported five to fifty feet, he was "upon" the vehicle. Citing *Aucoin v. Lafayette Ins. Co.*, 771 So.2d 95, 97 (La. App. 3 Cir. 2000), the Estate asks that we reject application of the reasonable connection test, offering that "[c]overage issues that hinge on whether a claimant was 'upon' a vehicle fall into two categories: those where the claimant was actually upon the

5

vehicle and those where the claimant wasn't." The Estate asks us to find that Mr. Richerson was "occupying" the truck by virtue of his physical contact with it and end the inquiry, arguing that "[t]he 'reasonable connection' test was developed for claimants who have no or only tenuous contact with a covered vehicle when injured . . . . It has no application in this case."

¶12   *Aucoin* categorized cases depending on whether or not the claimant had physical contact with the vehicle at the time of the accident. *Aucoin*, 771 So.2d at 97. Depending upon the circumstances, a claimant could be found to be "upon" the covered vehicle and therefore "occupying" it, in either category. *Aucoin*, 771 So.2d at 97-98; *see Hastings v. Int'l Serv. Ins. Co.*, 490 So.2d 656 (La. App. 2 Cir. 1986) (claimant in physical contact with insured auto was found to be "occupying"); *Westerfield v. LaFleur*, 493 So.2d 600 (La. 1986) (claimant *not* in physical contact with insured auto found to be "occupying").

¶13   However, the Estate's argument requires that virtually any pedestrian injured in a vehicle accident would be deemed to be "occupying" the vehicle by having been in any way "on" the vehicle at the moment the accident occurred. Even *Aucoin* noted that "[t]he fact that the impact caused [the claimant] to touch the insured vehicle should not determine coverage." *Aucoin*, 771 So.2d at 98 (citation omitted).

¶14   The reasonable connection test we have employed permits a broad review of the facts, avoiding a microscopic focus on whether the claimant was physically "on" the vehicle at the moment of impact, as demonstrated in *Sayers*. There, Donald Sayers was tuning-up a vehicle for Charles Storm. Sayers advised Storm to run the engine to clean

6

the carburetor, so Storm left to purchase gasoline. On the way to the gas station, Storm's vehicle ran out of gas. Storm walked back to Sayers's, obtained a can of gasoline and a set of jumper cables from Sayers, and rode back to the stalled vehicle with a man named Yates. Yates and Storm were unable to start the stalled vehicle, so they returned to Sayers's for his assistance. Sayers, Storm, and a man named Galetti then drove to the stalled vehicle in Galetti's Suburban, intending to use it to jump start Storm's vehicle. Galetti parked with his Suburban facing Storm's vehicle to facilitate the jump. As Sayers was leaning over the engine of Storm's vehicle, an uninsured vehicle struck Storm's vehicle, pinning Sayers between the Storm vehicle and the Galetti Suburban. *Sayers*, 192 Mont. at 337-38, 628 P.2d at 660-61. Sayers sought payment under Galetti's uninsured motorist coverage, but Safeco contended that Sayers was not "occupying" Galetti's Suburban since he was working on Storm's vehicle and several feet away from Galetti's Suburban at the time of the accident. Similar to the policy definition in the present case, Galetti's Safeco policy defined "occupying" as "in or upon or entering into or alighting from." *Sayers*, 192 Mont. at 338, 628 P.2d at 661. We reasoned that, although Sayers was not in physical contact with the Galetti vehicle, "Sayers rode in the Galetti vehicle for the single purpose of jump-starting the disabled car using Galetti's battery. His attempted assistance was undeniably dependent upon and thus reasonably connected to the Galetti vehicle." *Sayers*, 192 Mont. at 339, 628 P.2d at 661. Sayers's "'activity [was] reasonably carried out and [was] reasonably connected with the operation of the vehicle.'" *Sayers*, 192 Mont. at 339, 628 P.2d at 661 (quoting *Nelson*, 163 Mont. at 86,

7

515 P.2d at 364). Thus, despite the fact that Sayers was not in contact with the vehicle at the time of the accident, we held that he was nonetheless "occupying" the Galetti vehicle and was covered. *Sayers*, 192 Mont. at 339, 628 P.2d at 661.

¶15 Unlike Sayers, Mr. Richerson had no contact with or connection to the vehicle other than the accident itself. The concrete truck was not hired by Mr. Richerson and was being used on a separate job. He was not working with the truck in any way and was not entering or exiting the truck. He had no purpose or connection with the truck other than the incidental contact that led to his unfortunate injuries and death. This was insufficient to trigger coverage under the definition of "occupying" in the policy.

¶16 The District Court correctly concluded that Mr. Richerson was not an insured and did not err in granting summary judgment in favor of Cincinnati.

¶17 Affirmed.


/S/ JIM RICE


We concur:

/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ BRIAN MORRIS
/S/ MICHAEL E WHEAT

8